[L.A. No. 29698. In Bank. Aug. 26, 1970.]

ROSE PHILLIPSON, Plaintiff and Appellant, v.
BOARD OF ADMINISTRATION, PUBLIC EMPLOYEES'
RETIREMENT SYSTEM, Defendant and Respondent.

34

## COUNSEL

Hennigan, Butterwick & Clepper, J. David Hennigan, Kaufman & Wagner and Marcus M. Kaufman for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, Harold B. Haas, Assistant Attorney General, Edward M. Belasco and William L. Zessar, Deputy Attorneys General, for Defendant and Respondent.

Bertram McLees, Jr., County Counsel (San Diego), Joseph Kase, Jr., Roger Arnebergh, City Attorney (Los Angeles), Paul B. Pressman, Deputy City Attorney, and Arthur E. Babbel as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**TOBRINER, J.**—In 1966 plaintiff Rose Phillipson obtained an interlocutory decree of divorce from her husband, Nicholas Phillipson, which decree awarded her, among other property, the funds accrued to Nicholas's retirement account during his employment by the state. Defendant Board of Administration of the Public Employees' Retirement System refused to pay over the sum credited to Nicholas's account, and plaintiff brought this present action for declaratory relief. The superior court entered judgment for defendant, and plaintiff appeals.

█ We hold that both accumulated contributions of married employees to the Public Employees' Retirement System, and matured retirement benefits allocable to those contributions, are community property, and as such are subject to division and award in an action for divorce. █ The award of that interest to the nonemployee spouse lies within the power of the superior court; it does not violate the prohibition against assignment of pension rights contained in Government Code section 21201. █ Finally, we hold that when the court renders an interlocutory judgment of divorce after the employee has terminated state service, but before he has elected the form of retirement benefits, the divorce court has jurisdiction to require that benefits be cast in whatever form is most useful to the community. We therefore uphold the award to plaintiff of the accumulated contributions credited to the retirement account of Nicholas Phillipson.

Nicholas Phillipson was employed by the State of California as a cook at the California School for the Deaf from 1955 until he left state employ on April 1, 1966. As a state employee, he had contributed the required amounts to the Public Employees' Retirement System; as of July 31, 1967, the date of the commencement of the present action, his accumulated contributions, plus accrued interest, totalled $4,532.66.

On April 14, 1966, plaintiff, his wife of 22 years, obtained an interlocutory decree of divorce on grounds of extreme cruelty.[1] The decree awarded plaintiff, among other property,[2] "any State Employees Retirement System Funds, which have accrued to the credit of defendant by reason of his employment as a Cook at the California School for Deaf at Riverside, California." Nicholas Phillipson did not contest the divorce nor appeal from the judgment.

By filing a formal application for retirement with the board on July 19, 1967, Nicholas Phillipson elected to receive a pension for life. On July 31 plaintiff instituted the instant action in order to obtain an adjudication that she owned the funds in Nicholas's account with the Public Employees' Retirement System, and to enjoin the board from approving Nicholas's

---

[1]Plaintiff obtained a final decree on April 17, 1967, which incorporated the provisions of the interlocutory decree.

[2]The interlocutory decree also awarded plaintiff the equity in two houses and two duplexes owned by the Phillipsons, and the balance of about $10,000 in an account at California Federal Savings and Loan. At the time of the decree, however, Nicholas had withdrawn the entire balance in the savings and loan account, and shortly after the decree he left California, apparently taking the money with him. The court issued a bench warrant ordering his arrest for contempt for failure to reveal the location of the funds withdrawn from the savings and loan account, but the warrant has not been served.

application for retirement benefits. She named and served Nicholas and the board as defendants. Nicholas did not appear and his default was entered; the board answered, asking that plaintiff take nothing by her action and that Nicholas be adjudged the owner of all funds on account with the system. The parties submitted the matter on the documentary evidence. The trial court entered judgment for the board; plaintiff appeals.

### 1. *Defendant board has standing to contest plaintiff's claim.*

■ Plaintiff initially contends that the board occupies the status of stakeholder, with no independent interest in the subject matter of this action. In *Ogle .v. Heim* (1968) 69 Cal.2d 7, 13 [69 Cal.Rptr. 579, 442 P.2d 659], however, we noted that "[p]ension administrators . . . have a substantial and abiding interest in maintaining the integrity of their funds and assuring eventual security against profligacy and misfortune." (See *Thomas* v. *Thomas* (1961) 192 Cal.App.2d 771, 785 [13 Cal.Rptr. 872].) The Public Employees' Retirement System would be seriously hampered if the board were subject to monetary judgments rendered in default proceedings to which the board had not been joined as a party and accorded no opportunity for contest.

The standing of the board, however, narrows to the limited function of raising the issue of the power of the superior court to award Nicholas Phillipson's retirement benefits to plaintiff. Since Nicholas did not appeal the divorce decree, that decree has now become res judicata; hence, whether the divorce court should have awarded the retirement benefits to plaintiff does not concern us; we ponder only the question of the court's legal authority to render that award.

### 2. *Monies contributed to the Public Employees' Retirement System, and benefits payable, are community property.*

State employees and other governmental employees who are members of the Public Employees' Retirement System (see Gov. Code, § 45345) must contribute a portion of their salary to that system. On retirement, the member can elect to withdraw his contributions (Gov. Code, §§ 20393, 20652) or he can choose from among several pension programs. If he selects a pension, the amount of the pension is fixed not by the balance in his account, but by a formula which weighs the length of service in state employ, his rate of compensation, his sex, and his age at retirement. (Gov. Code, § 21251.1.) Under this formula, the actuarial value of the pension amounts to at least twice that of the member's contribution, with the difference funded by state contribution.

■ The salary earned by an employee during marriage, of course, is community property (Civ. Code, § 164, now § 5110[3]). Likewise, both retirement contributions withdrawn from that salary and employer contributions added in consideration of employee services constitute community property.[4] In *Benson* v. *City of Los Angeles* (1963) 60 Cal.2d 355, 359 [33 Cal.Rptr. 257, 384 P.2d 469], in discussing the pension rights of a municipal employee, we stated that "pension rights which are earned during the course of the marriage are the community property of the employee and his wife."[5] *French* v. *French* (1941) 17 Cal.2d 775, 778 [112 P.2d 235, 134 A.L.R. 366], declared that the pension payable to a retired member of the United States Navy was community property. And directly on point, *Crossan* v. *Crossan* (1939) 35 Cal.App.2d 39, 40 [94 P.2d 609], held that the accumulated retirement contributions of a state employee were community property.[6]

3. *The superior court in a divorce action may properly exercise jurisdiction over matured pension rights of an employee in the Public Employees' Retirement System.*

*Williamson* v. *Williamson* (1962) 203 Cal.App.2d 8, 11 [21 Cal.Rptr. 164], summarized the law as follows: "[P]ensions become community property, subject to division in a divorce, when and to the extent that the party is certain to receive some payment or recovery of funds. To the extent that payment is, at the time of the divorce, subject to conditions which may or may not occur, the pension is an expectancy, not subject to division

---

[3]The retirement of Nicholas Phillipson, the judgment of divorce, and the superior court judgment in the instant action all antedate the effective date of the Family Law Act (Civ. Code, § 4000 et seq.) which became operative on January 1, 1970.

[4]See Kent, *Pension Funds and Problems Under California Community Property Laws* (1950) 2 Stan.L.Rev. 447, 451-453.

[5]Accord: *Cheney* v. *San Francisco Emp. Retirement System* (1936) 7 Cal.2d 565, 569 [61 P.2d 754]; *Williamson* v. *Williamson* (1962) 203 Cal.App.2d 8, 11 [21 Cal.Rptr. 164].

[6]Former Civil Code section 161b (now § 5106) impliedly recognized that payments under an employee benefit plan could be community property. It stated that "[n]otwithstanding the provisions of Sections 161a and 172 of this code" payments under an employee benefit plan, without notice of an adverse claim, fully discharge the payor. Section 161a (now § 5105) gave the wife a present, equal, and existing interest in community property; section 172 (now § 5125) prohibited the husband from disposing of community personalty without a valuable consideration unless he received the wife's consent. The adverse claims foreseen by section 161b thus clearly included claims based on the community property rights of an employee's wife.

Government Code section 21210 provides immunity from adverse claims against defendant board in language identical to former Civil Code section 161b. (See *infra* at pp. 18-20.)

as community property."[7] ■ On leaving state employ, Nicholas Phillipson enjoyed an immediate and unconditional right to withdraw his accumulated contributions plus interest (Gov. Code, §§ 20393, 20652); since he had reached the age of 55, and had accumulated contributions exceeding $500, he also possessed an unconditional and vested right to a pension. (Gov. Code, §§ 20393, 20652, 20951, 21251.1.) Consequently his pension rights, having matured, were "property" subject to the jurisdiction of the court.[8]

Defendant and amicus City of Los Angeles argue that the board did no more than enter into a contract to pay over the accumulated funds, or a pension, to Nicholas; they contend that the only community property interest of the Phillipsons, and thus the only interest that the divorce court could award plaintiff is the right to enforce that contract. To require payment direct to plaintiff, they argue, would be to reform the contract.

In discussing this argument, both parties rely on *Benson* v. *City of Los Angeles, supra,* 60 Cal.2d 355. In that case August Benson had worked for the city from 1916 to 1940, when he retired on a pension. He married Teresa in 1920. They were divorced in 1952; the divorce judgment did not attempt to dispose of property interests. August married Olive in 1953, and on his death both Teresa and Olive claimed a widow's pension.

The court upheld the award to Olive in the following language: "Conceding the community nature of the pension, it follows that the community possessed only such an interest therein as August's employment contract provided. . . . That contract provided for payments to August during his lifetime and thereafter for the payment of benefits to August's 'widow.' Certainly if August had married and divorced several wives during the

---

[7] See *French* v. *French, supra,* 17 Cal.2d 775, 778; Kent, *Pension Funds and Problems Under California Community Property Laws, supra,* 2 Stan.L.Rev. 447, 463-465; cf. *Brophy* v. *Employees Retirement System* (1945) 71 Cal.App.2d 455, 459 [162 P.2d 939]; *Kern* v. *City of Long Beach* (1947) 29 Cal.2d 848, 851 [179 P.2d 799].

[8] While an employee continues in state employ, the nature and value of his retirement pension is contingent both upon his survival until retirement and his age at retirement. (Gov. Code, §§ 21360, 21365.5, 21250, 21251.1.) Thus the retirement benefits of a present employee are classed as an expectancy, and neither those rights nor their actuarial equivalent is divided or awarded as community property in a divorce proceeding. (*French* v. *French* (1941) 17 Cal.2d 775, 778 [112 P.2d 235, 134 A.L.R. 366]; *Williamson* v. *Williamson, supra,* 203 Cal.App.2d 8, 11.) On the other hand, no matter how or when an employee leaves state service he is entitled to withdraw his accumulated contributions, unless he elects otherwise (Gov. Code, §§ 20393, 20652); if he dies in state employ the contributions or equivalent are paid to his beneficiaries or estate (Gov. Code, §§ 21361, 21365.1). Thus the court should include the accumulated contributions in evaluating and dividing the community property (*Crossan* v. *Crossan, supra,* 35 Cal.App.2d 39, 40); it cannot render any award, however, which compels the board to pay over such contributions prior to the employee's termination of service with the state.

time he was employed by the city, each former wife would not be entitled to a widow's pension. It is apparent that the contract between the city and the community did not contemplate multiple or divisible pensions, but instead a pension for the member's 'widow' only. . . .

"On the face of the contract entered into between the community and the city, Teresa was not entitled to assert any personal rights other than those of the community, which were to enforce payments to August and after his death to his widow. . . .

"This is not to say that upon a division of the community estate she could not have participated therein. Undoubtedly she had an interest which she could have asserted in the payments to August during his lifetime, had she sought to do so. But after August's death the only right remaining was to enforce the city's covenant to make payments to the 'widow.' " (60 Cal.2d at p. 360.)

Defendant board quotes the statement of *Benson* that "a wife of a public employee acquires no vested interest in a pension until it becomes payable to her." (60 Cal.2d at p. 362.) It argues that although Nicholas Phillipson's pension had vested in him, it would not vest in plaintiff unless and until Nicholas elected a pension with death benefits, named plaintiff as beneficiary, and subsequently died. Amicus curiae notes that the Benson divorce did not dispose of community property, and thus any vested interest of Teresa in community property at the time of the divorce would be owned by Teresa as a tenant in common as of August's death.[9] It thus interprets the court's denial of a widow's pension to Teresa as an inferential holding that she owned no vested interest in pension rights at the time of the divorce.

Both arguments ignore the language of *Benson* that "[t]his is not to say that upon a division of the community estate she [Teresa] could not have participated therein. Undoubtedly she *had an interest* which she could have asserted in the payments to August during his lifetime. . . ." (Italics added.) (60 Cal.2d at p. 360.) In *Benson* the court clearly differentiates August's vested pension rights upon retirement from his "widow's" contingent rights. Thus, after his retirement August had a present and unconditional right to pension payments; this right, therefore, composed a community asset which could be divided upon divorce. But this right to a lifetime pension or to accumulated contributions did not survive August's

---

[9]See *Brown* v. *Brown* (1915) 170 Cal. 1, 3 [147 P. 1168]; *Buller* v. *Buller* (1944) 62 Cal.App.2d 687, 692 [145 P.2d 649].

death. The only right that remained after death was that of his widow to a widow's pension; that right, however, was a conditional one, payable only if August left a widow and only to the person so described.

In the instant case, at the time of the divorce the pension rights of Nicholas Phillipson, like the lifetime pension of August Benson and unlike the widow's pension in that case, were unconditionally payable. Nicholas Phillipson, at the date of the rendition of the interlocutory decree, had left state employment; his pension rights had accrued. The divorce court, therefore, properly treated those rights as property subject to its control. Under these circumstances, to describe the community property interest as merely the right to enforce a contract to pay Nicholas is inconsistent with *Benson.* An award to plaintiff of a "property interest" which consists of no more than a right to enforce payments to her ex-husband would indeed be vacuous.

4. *Neither Government Code section 21201 nor section 21203 prevents the divorce court from awarding an employee's matured pension rights to his spouse.*

■ We shall point out that, although we have interpreted section 21201 to bar creditors who seek to levy upon the pension funds, plaintiff here vindicates a different and distinguishable right: the right of ownership in the funds. Further, since the board in the present case cannot, and does not, contend that an award of pension rights is a prohibited assignment under the code sections, it must inferentially recognize that, if such rights embrace community property, the court has both the power and obligation to divide such property equitably. ■ Nor, as we shall explain, can the board successfully rely upon section 21203 since that provision merely protects the employee against statutory change that might attempt to deprive him of his pension rights. ■ And, finally, since the divorce court clearly retains the power to adjudicate the rights to all the community property, that court was not compelled merely to divide community property pension rights equally between the parties.

Government Code section 21201 provides that "[t]he right of a person to any benefit or other right under this part and the money in the Retirement Fund is not subject to execution, garnishment, attachment, or any other process whatsoever, and are unassignable . . . ." In *Ogle* v. *Heim, supra,* 69 Cal.2d 7, we construed Government Code section 31452, which protects pensions of county employees in language identical to Government Code section 21201, to bar execution against the pension fund of a judgment for child support. We reasoned that the prohibition against assignment restricts both voluntary and involuntary alienation (p. 13), and

that to permit an execution for child support would be to create an exception where none exists. (P. 9.) A companion case, *Miller* v. *Superior Court* (1968) 69 Cal.2d 14 [69 Cal.Rptr. 583, 442 P.2d 663], exempted pension payments from liability for alimony.

██ Plaintiff, however, claims not as a creditor, but as an owner with a "present, existing, and equal interest." (Civ. Code, § 161a, now § 5105.) The recognition of an ownership claim cannot be described as the levy of execution, garnishment, attachment or assignment of property.[10] In *Crossan* v. *Crossan, supra,* 35 Cal.App.2d 39, 40, the court found accumulated contributions to the retirement fund to be community property, awarded this property to the employee, and gave his spouse community property of equivalent value.

The board cannot, and does not, contend that an award to the employee of the pension rights, which necessarily must include the wife's community property interest therein, constitutes a prohibited assignment, nor does it deny the need to consider the value of pension rights in making an equitable division of the community property. Yet the court's power to decide whether immediately payable pension rights are community property, and to award them in its judgment to the employee spouse, must necessarily incorporate the right to award them to the nonemployee spouse. Otherwise in cases in which the retirement benefits comprised the only or principal asset, or in which, as in the present case, the employee had absconded with the other assets, the court could not discharge its duty to decree a just division of community property.[11] In such a case an award of all pension rights to the employee would virtually nullify the wife's claim to a present, equal, and existing interest; for all practical purposes it would amount to a conversion of the rights into separate property.[12]

---

[10]In *Wissner* v. *Wissner* (1950) 338 U.S. 655 [94 L.Ed. 424, 70 S.Ct. 398] (see fn. 12, *infra*), the superior court had ordered that the beneficiary, upon receipt of the installment payments of life insurance proceeds, pay over half the proceeds to the wife. The Supreme Court held that this order unlawfully "seized" the proceeds in violation of 38 U.S.C. section 454a, which provided that payments to the beneficiary ". . . shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever . . . ."

Distinctions between the language of Government Code section 21201 and 38 U.S.C. section 454a are relatively unimportant; the significant distinction is the context of the legislation. Section 21201 was enacted in a community property context and in conjunction with provisions (Gov. Code, § § 21201.5 and 21210) which recognize the community property character of pension contributions. The federal exemption statute was incorporated into a national insurance program, designed to afford the same immunities in both community property and common law states.

[11]Civil Code section 146 (now revd. as Civ. Code, § 4800).

[12]Defendant suggests that perhaps Government Code section 21201 destroys the community property character of state employees' pension rights. For this argument it relies on *Wissner* v. *Wissner, supra,* 338 U.S. 655. (See fn. 10, *supra*.) In that case

The board also relies on section 21203, which provides that ". . . after a member has qualified . . . as to age and service for retirement for service, nothing shall deprive him of the right to a retirement allowance as determined under this part." This sweeping language envelops a legislative purpose of more limited scope. The statutory history indicates that the section serves the objective of ensuring that once an employee has qualified for a pension, no statutory or administrative change in the retirement law can deprive him of his pension rights.[13] The broad interpretation suggested by defendant would reduce section 21201 to meaningless redundancy; if literally nothing can deprive an employee of a vested pension, clearly neither execution, garnishment, attachment, or assignment could deprive him of that pension.

Both section 21201 and section 21203, moreover, must be read in conjunction with section 21210[14] which provides that "notwithstanding the provisions of Sections 161a and 172 of the Civil Code, whenever payment or refund is made by this system to a *member,* former member, beneficiary of a member or estate of a member pursuant to any provision of this part, such payments shall fully discharge this system from all adverse claims thereto unless, before such payment or refund is made, this system has received at its office in Sacramento written notice by or on behalf of

---

a California wife claimed a community property interest in the proceeds of a soldier's life insurance policy issued under the National Service Life Insurance Act (38 U.S.C. § 801 et seq.). In a 5-3 decision, the Supreme Court rejected her claim, holding that the federal act was intended to provide "a uniform and comprehensive system of life insurance for members and veterans of the armed forces . . ." (p. 658 [94 L.Ed. p. 428]) and that its provisions overrode any provisions of state law that would interfere with its uniform administration. The majority opinion assumed that the insurance premiums were community property; it did not discuss whether the proceeds were community property.

*Wissner* is readily distinguishable from the present case. No supremacy clause permits Government Code section 21201 to override Civil Code sections 146 and 161a; to the contrary, our duty is to harmonize these enactments if reasonably possible. (Code Civ. Proc., § 1858.)

[13]Section 21203 derives from section 103a amending the State Employee's Retirement Act (Stats. 1943, ch. 640, § 23.5). Section 103a as enacted read: "After a member has qualified . . . for retirement for disability, or as to age and service for retirement for service, nothing shall deprive him of the right to a retirement allowance as determined under this act. Such retirement allowance and qualification therefor shall be subject *otherwise* to the provisions of this act." (Italics added.) This language shows the legislative concern that other provisions of the retirement act, or future changes in the act, might deprive an employee of a vested pension right. The changes in wording which accompanied the codification of the State Employee's Retirement Act into the Government Code do not indicate any change in legislative intent.

[14]"Where possible, all parts of a statute should be read together and construed to achieve harmony between seemingly conflicting provisions rather than holding that there is an irreconcilable inconsistency." (*Wemyss* v. *Superior Court* (1952) 38 Cal.2d 616, 621 [241 P.2d 525].)

some other person that such person claims to be entitled to such payment or refund." (Italics added.)

As plaintiff points out, section 21210 plainly contemplates that claims may be asserted against monies payable to the member during his lifetime. Since section 21201 effectively immunizes the board from the liability for claims of creditors (*Ogle* v. *Heim, supra,* 69 Cal.2d 7; *Miller* v. *Superior Court* (1968) 69 Cal.2d 14 [69 Cal.Rptr. 583, 442 P.2d 663]), section 21210 must be directed to claims by a spouse under community property laws. The reference in section 21210 to Civil Code sections 161a and 172 confirms that it was the legislative intent that section 21210 would secure the board from double liability for claims that emanate from community property interests. The immunity conferred, moreover, is conditional; if the board pays the member after receiving written notice of the spouse's adverse claim, the board remains subject to double liability.

To construe section 21201 as a bar to claims of community property by spouses as well as to claims by creditors would make unnecessary the immunity conferred by section 21210. Likewise, defendant's contention that under section 21203 literally nothing can deprive a member of his pension would render section 21210 unnecessary; it would also conflict with the implicit assumption of section 21210 that valid adverse claims can be asserted against payments made to a member during his lifetime.

Finally, defendant contends that if pension rights are community property each spouse possesses an equal right in that property (Civ. Code, § 161a, now § 5105); therefore, it argues, the divorce court must divide the pension rights equally, and any award of the share of one spouse to the other violates the prohibition against assignment of Government Code section 21201.[15] As we noted previously, the court in *Crossan* v. *Crossan, supra,* 35 Cal.App.2d 39, 40, awarded all pension rights to the employee and gave community property of equal value to his wife. All parties agree, and we concur, that if the community musters sufficient assets to do so, the preferable mode of division would be to award the pension rights to the employee and property of equal value to the spouse. Yet defendant's thesis would require an equal division of pension rights in *all* divorce cases in-

[15]Civil Code section 146 provided that "[i]f the decree is rendered on the ground of adultery, incurable insanity or extreme cruelty, the community property . . . shall be *assigned* to the respective parties in such proportions as the court . . . may deem just. . . . If the decree be rendered on any other ground . . . the community property . . . shall be equally divided between the parties." (Italics added.) This same language of assignment appears in the divorce decree of the Phillipsons; the superior court "assigned" to plaintiff as separate property the listed community property assets, *including the retirement fund account. This* assignment language disappears in the new section 4800, which speaks of "awarding" an asset to one spouse.

volving state employees, thus barring the division adopted in *Crossan,* and here urged by plaintiff, defendant, and amicus curiae.

Although the spouses enjoy equal interests in community property under Civil Code section 161a (now § 5105), former section 146 empowered the court to award the entirety of any asset to one spouse. Even in cases in which the court must divide the community property equally, it has never been supposed that each asset must be cleaved in twain, without regard to the wishes of the parties or the justice of the matter. We conclude that the possibility that upon divorce an asset may be awarded entirely to one spouse is one of the incidents of community property and, in a sense, a qualification of the equal interests of each spouse in each community asset. Hence the award of a community asset to one spouse is not the kind of transfer or conveyance of a property interest contemplated by section 21201's prohibition against assignment.

5. *When the divorce judgment intervenes between the employee's termination of state employment and his election of benefits, the divorce court has jurisdiction to control the form of benefits elected.*

Government Code section 20393 provides that a member, upon resigning from state service, "shall have the right to elect, not later than 90 days after the date upon which notice of said right is mailed by this system to the member's latest address on file in the office of this system, whether to leave such accumulated contributions on deposit in the Retirement Fund System. . . . Failure to make such election shall be deemed an irrevocable election to withdraw his accumulated contributions. . . ." If the member has reached age 55, and has either 20 years state service or accumulated contributions of more than $500, he may instead give notice of retirement. (Gov. Code, § 20951.) If he does so, he will receive a lifetime pension or "[i]n lieu of the retirement allowance for his life alone, a member or retired member may elect . . . to have the actuarial equivalent of his retirement allowance . . . applied to a lesser retirement allowance, in accordance with one of the optional settlements. . . ." (Gov. Code, § 21330.) Sections 21332 through 21335 provide various optional settlements.

In most cases, the availability of these alternatives will not affect the division of community property on divorce. If the employee is still in state employ at the time of divorce the right of election has not matured; if he has terminated he would usually, upon termination or shortly thereafter, have made a binding election among the alternatives, and by that act defined the nature of the retirement benefits owned by the community.

In the present case, Nicholas Phillipson resigned from state employ

on April 1, 1966, after about 11 years service and with accumulated contributions well in excess of $500. At the date of the divorce judgment, 14 days later, he had made no election. The board, uncertain about the validity of that judgment, did not send him the notice specified ·in section 20393 within 90 days after discontinuance of service. Fifteen months later, Nicholas sent written notice of retirement, thereby electing to receive a pension for life.

 When the divorce judgment intervenes between termination of employment and election of benefits, the matter of determining the form of benefits becomes interlocked with the division of the community property. The nature and value of the pension rights as a community asset will depend upon the form of benefit selected. In this situation we believe that the divorce court must exercise a measure of control over the election. Otherwise the member spouse could delay election until after the divorce judgment and then, if that judgment awarded the pension rights to the non-member spouse, choose that form of benefits least valuable or least convenient to her. Although the statutes speak of election by the "member," they do not contemplate the exclusive and uncontrolled exercise of this right by a former employee who has lost all beneficial interest in the pension rights. In the present case the divorce court, by its judgment, awarded the accumulated funds to plaintiff; in so doing it exercised an authority to control the form of benefits which was requisite to the effective performance of its judicial duty to divide the community property.

 Since the divorce court acted within its jurisdiction, neither Nicholas Phillipson nor the board properly may question the wisdom of the court's exercise of that authority. Both plaintiff's complaint and the interlocutory judgment notified Nicholas that plaintiff sought to withdraw the accumulated contributions. He did not answer the complaint nor appeal the judgment. Although he later elected a life pension, he did not appear in this case to defend his right to that election, and by his non-appearance admitted the allegations of plaintiff's complaint to the effect that he had no interest in or claim to the funds on deposit. The board's standing here is limited to matters going to the authority of the divorce court; since that court acted within its jurisdiction, the board has no ground for objection.

6. *An award of retirement benefits to the spouse will not result in wanton destruction of actuarial value.*

The actuarial value of a life pension usually far exceeds the amount of the employee's accumulated contributions plus interest. The withdrawal of these contributions for an employee with lengthy service results in the destruction of the additional value without benefit to the withdrawer. In

barring creditor's claims against pensions, we stated that "[a]llowing forced sales of pensions prior to the time they become payable results in loss to the employee and cost to the pension system disproportionate to any benefit to creditors. . . . Such would be destructive of socially invaluable methods of providing for old-age security through programs of enforced savings and investment." (*Ogle* v. *Heim, supra,* 69 Cal.2d 7, 12-13.)

■ Since an employee on terminating state employment has the right to demand his accumulated contributions, the potential for destruction of actuarial value prevails in all cases. To permit a divorce court to award pension rights to the spouse, however, in no way increases that hazard. ■ The contention of the board to the contrary appears to be based on the assumption that an award to the wife must necessarily take the form of a withdrawal of accumulated contributions. This assumption is erroneous; the community property of the marriage includes not only the contributions but also the matured pension rights payable as a benefit of employment.

7. *An award of retirement benefits to the spouse will not impair significantly any objectives of the Public Employees' Retirement System.*

■ Pension programs for public employees serve two objectives: to induce persons to enter and continue in public service, and to provide subsistence for disabled or retired employees and their dependents. (*Bellus* v. *City of Eureka* (1968) 69 Cal.2d 336, 351 [71 Cal.Rptr. 135, 444 P.2d 711].) Defendant contends that to permit a divorce court to award pension rights to the employee's spouse will undermine these objectives.

We consider the various situations in which a court might award pension rights to the spouse. An award of pension rights to the employee and of property of equal value to his spouse clearly presents no danger to the retirement system. ■ Cases such as the instant one, in which the court awards the pension rights to the spouse when the employee has concealed other community assets, also do not threaten the objectives of the system; the employee is not without subsistence, and the opportunity to retain pension rights while absconding with other community assets is not, we hope, a significant inducement to state employment.

Awards to the spouse pursuant to the unequal division of community property possible under the pre-1970 law, on the other hand, might have presented a significant danger. This danger, however, can be safely ignored. Persons presently entering or continuing in state employ will presumably act on the basis of the present law.

We are left with but one type of case in which an award to the spouse might collide with the objectives of the retirement system. This is the case in which the pension is the only substantial community asset and a division of the asset leaves the employee without adequate subsistence. But in this case the alternative, an award of the entire pension to the employee, leaves his spouse totally destitute. In that unfortunate situation, the injustice of awarding all benefits to the employee may leave no alternative but to permit the court to award a portion of the pension rights to the spouse.

## 8. *Conclusion*

■■■ To sum up the essence of the case, we do not believe the Legislature has declared the employee's right to a pension so sacrosanct that it is incompatible with his spouse's ownership of her community share in it. ■■■ Both employee and non-employee own community property rights in the pension fund that are of equal stature; such rights are equally subject to the power of the divorce court. ■■■ Because the employee participates in the pension program he does not thereby strip his spouse of vested community property rights in that fund.

The judgment is reversed with directions to enter judgment for plaintiff and appellant declaring that she is the owner of, and entitled to payment of, all funds, credits and monies standing in the name of her former spouse, Nicholas G. Phillipson, in account No. 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 in the Public Employees' Retirement System (formerly State Employees' Retirement System), and further declaring that upon payment of said monies, the Board of Administration, Public Employees' Retirement System, shall be fully discharged from all liability in and to said account, including any adverse claim of the employee, Nicholas G. Phillipson.

Sullivan, Acting C. J., Peters, J., Mosk, J., and Wood, J.,* concurred.

**BURKE, J.**—I dissent. The majority hold that plaintiff is entitled to all of the accumulated retirement funds standing in the account of her former husband. Although I agree that plaintiff should be paid her half share of these community funds, Government Code section 21201 precludes us from awarding to plaintiff any portion of her husband's half interest therein.

Section 21201 provides that "The right of a person to any benefit or other right under this part and the money in the Retirement Fund is not subject to execution, garnishment, attachment, *or any other process what-*

---

*Assigned by the Acting Chairman of the Judicial Council.

*soever,* and are unassignable . . . ." The italicized phrase is clearly broad enough to include judgments in divorce decrees, since "Process has normally been considered to mean those actions that are initiated either independently, such as the original commencement of a suit, or those processes initiated collaterally, such as an attachment." (*Tellefsen* v. *Key System Transit Lines,* 198 Cal.App.2d 611, 613 [17 Cal.Rptr. 919].) In *Miller* v. *Superior Court,* 69 Cal.2d 14 [69 Cal.Rptr. 583, 442 P.2d 663], we construed language similar to section 21201 as exempting pension payments from liability to a former wife for alimony. And in *Ogle* v. *Heim,* 69 Cal.2d 7 [69 Cal.Rptr. 579, 442 P.2d 659], we interpreted Government Code section 31452, protecting county pensions from legal process in language identical to section 21201, as barring execution against pension funds for child support. (See also *Thomas* v. *Thomas,* 192 Cal.App.2d 771, 783 [13 Cal.Rptr. 872], holding that the status of a divorced wife as beneficiary of an alimony decree is no different from that of other judgment creditors.) The carefully reasoned opinions in *Miller* and *Ogle* received the unanimous support of this court, and their rationale is controlling in this case.

The majority attempt to distinguish *Miller* and *Ogle* solely on the ground that "Plaintiff, however, claims not as a creditor, but as an owner with a 'present, existing, and equal interest.' (Civ. Code, § 161a, now § 5105.) The recognition of an ownership claim cannot be described as the levy of execution, garnishment, attachment or assignment of property." (*Ante,* p. 44.) The majority fail to recognize that as to her husband's half share of these community funds, plaintiff claims not as owner, but solely as judgment creditor. The divorce decree awarding to plaintiff her husband's share of those funds under former Civil Code section 146 clearly constituted judicial "process" under section 21201, and was indistinguishable in legal effect from the similar awards of alimony and child support in *Miller* and *Ogle,* decreed pursuant to former Civil Code section 139.

Section 146, like section 139, derived from provisions first, adopted in this state in 1872, and authorized the divorce court to "assign" the community property to the respective spouses in such proportions as the court may deem just, in cases wherein the decree is rendered on the ground of adultery, incurable insanity or extreme cruelty. Relying upon section 146, the majority assert that "the possibility that upon divorce an asset may be awarded entirely to one spouse is one of the incidents of community property and, in a sense, a qualification of the equal interests of each spouse in each community asset. Hence the award of a community asset to one spouse is not the kind of transfer or conveyance of a property interest contemplated by section 21201's prohibition against assignment." (*Ante,* p. 47.)

However, the mere possibility that the divorce court may, in its discretion, award a portion of the husband's share of the community property to the wife under section 146 is no more a "qualification" upon the husband's property rights than the possibility that the court will also order payments of alimony or child support from his share of that property. And yet in *Miller* and *Ogle,* we unanimously rejected the contention that an award of alimony or child support somehow "qualified" the husband's pension rights.

The majority's misconception regarding the underlying nature of plaintiff's claim is revealed by placing the matter in its proper historical perspective. Prior to 1927, in California the wife had "no title to the community property nor estate or interest therein," even though by reason of section 146 "upon a divorce she may, in a proper case, be awarded even the whole of it." (*Estate of Brix,* 181 Cal. 667, 676 [186 P. 135]; see *Stewart* v. *Stewart,* 199 Cal. 318 [249 P. 197]; 1 Armstrong, California Family Law, pp. 585-589.) In 1927, Civil Code section 161a was enacted, providing that "The respective interests of the husband and wife in community property during continuance of the marriage relation are present, existing, *and equal* interests . . . ." (Italics added.) Therefore, notwithstanding the preexisting provisions of former section 146, the wife's *ownership* interest in the community property derives solely from section 161a and is limited to an *equal* share of that property. Plaintiff obtained her purported interest in her husband's share of the community property not in recognition of her claim as owner of that property, but pursuant to a judgment of divorce. As stated in *Stevenson* v. *Superior Court,* 62 Cal.2d 150, 152 [41 Cal.Rptr. 466, 396 P.2d 922], a divorce decree in favor of the wife on the ground of extreme cruelty *"thereby created* in her a valuable property right to a share of the community property *in excess of one-half.*" (Italics added; see also *McClenny* v. *Superior Court,* 62 Cal.2d 140, 145-146 [41 Cal.Rptr. 460, 396 P.2d 916].) It is significant that in both *Stevenson, supra,* and *McClenny, supra,* the court speaks of an "award" of the community property to a spouse. To award, in this sense, means to give or assign by judicial decree. (See Black's Law Dictionary (4th ed. 1951) p. 174.)

Thus, since plaintiff claims *her husband's share* of the community funds solely by virtue of the court's award, in fact as judgment creditor, rather than as owner, Government Code section 21201 applies as an express statutory bar to the claim. Contrary to the majority's assumption, this result would not prevent divorce courts from awarding all retirement or pension rights to the employee spouse and community property of equal value to the nonemployee spouse, for the immunity granted by section 21201 may reasonably be construed as running only in favor of those

persons entitled to benefits under the terms of the Public Employee Retirement Law. Since nonemployee spouses such as plaintiff derive their interest in such benefits by reason of the operation of the community property laws, rather than the retirement act, section 21201 would not preclude judicial "assignment" of these benefits to the employee spouse.

As stated in *City of San Jose* v. *Forsythe,* 261 Cal.App.2d 114, 117 [67 Cal.Rptr. 754], "The law of California favors the enforceability of clauses protecting retirement benefits from the claims of creditors. . . . In view of [this] policy . . . the language therein employed should be liberally construed [citation]." The majority opinion ignores these policies and reaches a result in direct conflict with the principles announced in *Miller* and *Ogle.* Accordingly, I respectfully dissent therefrom.

McComb, J., concurred.