[Civ. No. 41895. Second Dist., Div. Five. Sept. 5, 1974.]

In re the Marriage of ELIZABETH K. and ROY OTTO PETERSON.
ELIZABETH K. PETERSON, Appellant, v.
ROY OTTO PETERSON, Appellant.

## COUNSEL

James W. Edson for Appellant wife.

Granville B. Smith for Appellant husband.

## OPINION

**KAUS, P. J.**—Petitioner Elizabeth K. Peterson and respondent Roy Otto Peterson both appeal from those portions of an interlocutory judgment of dissolution of marriage concerning spousal support and community property. The only issue argued on appeal is the disposition of Roy's pension rights as a federal civil service employee.

### FACTS

The parties were married in 1941, and since July 1942 Roy has been employed by the federal government. He is a member of the United States Civil Service Retirement System.

The system permits retirement with a pension under various circumstances, which we will discuss in detail below. The case directly involves a provision that permits an employee to retire and receive a pension at age 55 or more and after 30 years of service. Roy reached the age of 55 in 1971 and achieved 30 years of service on July 2, 1972.

The parties separated in July 1970, and wife filed a petition for dissolution that month. At that time, Roy was about 54 years old. The matter came to trial on May 10, 1972. Meantime, on March 4, 1972, Civil Code section 5118 had gone into effect, and the parties agreed that the community interest in Roy's pension rights would be calculated as of that date.[1]

Roy testified that he would be retiring on July 2, 1972, that is, when he had accumulated 30 years service. The parties agreed that the value of the pension, computed on Roy's earnings to March 1972, was about $815 per month. At trial, everyone proceeded on the assumption that

---

[1]Civil Code section 5118 provides: "The earnings and accumulations of a spouse . . . while living separate and apart from the other spouse, are the separate property of the spouse." When the parties separated, the cutoff date for Roy's earnings was the date of the interlocutory decree. (Stats. 1969, ch. 1608, § 8, p. 3340 [former § 5119, subd. (b)].) See also, *infra*, fn. 8.)

Elizabeth would share in his pension benefits when he started to receive them.[2]

The interlocutory decree was entered on May 31, 1972, about a month before Roy would be eligible to retire and collect an immediate pension.

The relevant and disputed portion of the decree provides: "The [husband] is ordered to pay [wife] as and toward spousal support the sum of $320 per month payable one-half on the first and fifteenth days of each month commencing May 15, 1972 and continuing until further order of court, [wife's] remarriage, or the death of [wife] or [husband].

". . . . . . . . . . . . . . . . . .

"The [husband] has a vested interest in the United States Civil Service Retirement System. Said interest is a community property asset when it is received. The [wife] is awarded one-half of the United States Civil Service Retirement payment when received by the [husband]. Said one-half retirement benefit shall be deemed to be the amount which [husband] would receive should he retire on or about July 2, 1972 after 30 years' employment in the United States Civil Service Retirement System.[3] Any payments made by the [husband] to the [wife] of retirement benefits shall be credited upon the existing $320 per month support order payable to [wife] by [husband] one-half on the first and one-half on the fifteenth of each month commencing on the first and fifteenth of each month following receipt of the first retirement check and continuing. The [husband] is awarded the balance of the retirement benefits. If [wife] survives [husband], she will succeed to such benefits as are allowable under the retirement agreement."

Besides the pension, the total community assets amounted to $7,700.

On June 15—still before Roy was eligible to collect his pension—his attorney filed a motion for a new trial, declaring that he had mistakenly believed that Roy "was eligible to receive his retirement pension if he had retired prior to July 2, 1972," that he had learned this was not true after the trial on May 10, and had immediately so written to the trial judge. On August 14, the motion was denied.

In denying Roy's motion for a new trial the court stated: "If I cut the pension, I'll add to the spousal support. This was a marriage of a consider-

---

[2]At least as of July 17, 1972, Roy had not yet retired.

[3]The difference between the projected amount of Roy's pension computed as of March 1972 and as of July 1972 is minimal and no one quarrels with this apparent variation from what the parties apparently agreed upon at the trial.

able period of time and this woman is entitled to adequate support one way or the other."

The pension plan allowed for a lump-sum payment on Roy's death. In July 1971, he changed the beneficiary from Elizabeth to their children. These benefits are discussed below.

More details will be added in the discussion.

## ISSUES

The central issue is Roy's contention on his appeal that the trial court erred in awarding Elizabeth one-half of his pension in a decree entered before he was entitled to receive that pension. A second issue is Elizabeth's contention on her appeal that she has an interest in the pension rights if Roy predeceases her.

## DISCUSSION

The federal civil service retirement plan (5 U.S.C. § 8331 et seq.)[4] operates as follows:[5] An employee who has worked a minimum of five years for the government is eligible for an annuity under certain conditions. (§ 8333, subd. (a).) The employee contributes to the retirement plan through payroll deductions. (§ 8334, subd. (a)(1).) The deduction has increased over the years; effective 1969, 7 percent was deducted from the employee's paycheck. (Pub.L.No. 91-93, § 102, subd. (a)(1).) The government also contributes to the fund. (§ 8348, subds. (a), (g).)

No benefits are payable until the employee retires. However, on retirement, benefits are payable as follows:

(1) The employee can request a lump-sum payment, consisting of his contributions plus 3 percent interest. (§ 8342, subds. (a), (h); 5 C.F.R. § 831.105.)

(2) An employee may be eligible for "immediate retirement" and pension when he is more than 55 years of age and has had 30 years of federal service. (§ 8336, subd. (a).) In this case this provision applied to Roy as of July 2, 1972.

(3) An employee may be eligible for "deferred retirement" if he leaves federal service at too young an age or with too few years of service to be eligible for an immediate pension. In that case, the employee will be eligible

---

[4]All references, except as noted, are to 5 United States Code.

[5]The description is limited to the situation involved in this case.

for a pension at 62 years of age, provided that he has accumulated five or more years of federal service. (§ 8338, subd. (a).) Thus, as applied to this case, if Roy had quit his job as of March 4, 1972—the cutoff date for determining the community interest in Roy's pension rights—he would have been entitled to an annuity when he reached the age of 62, that is, in 1978.

The amount payable under the plan is based both on years of service and salary earned. (§ 8339, subd. (a).) The amount of the pension does not depend on whether when the employee quits the service, he is eligible for "immediate retirement" or for "deferred retirement." (See § 8339, subd. (h).)[6]

Normally, the amount of the pension is automatically reduced to provide for a survivor's annuity. (§ 8339, subd. (j).) The survivor's annuity is payable to "a spouse to whom [the employee] was married at the time of retirement," or to "a widow . . . whom he married after retirement . . . ." (§ 8341, subd. (b).) The employee can, however, elect to take a full pension, which means that the surviving spouse is not entitled to any survivor's annuity. (§ 8339, subd. (j); § 8341, subd. (b).)

In this case, Roy testified that he intended to take a 100 percent pension. The interlocutory decree by stating that Elizabeth "will succeed to such benefits as are allowable," arguably requires him to take a reduced pension. We do not know what Roy did, or, indeed whether he has yet retired.

The survivor's pension is one benefit payable when the retired employee dies. There may also be a lump-sum death benefit payable if the employee's contributions exceed the amounts paid out in pensions. (§ 8342, subds. (d) through (h).) It is this lump-sum benefit to which Roy changed the beneficiary from Elizabeth to the children.

I

EMPLOYEE'S PENSION

Roy apparently does not dispute that his "retirement contributions withdrawn from [his] salary and employer contributions added in consideration of employee services constitute community property." (*Phillipson* v. *Board of Administration,* 3 Cal.3d 32, 40 [89 Cal.Rptr. 61, 473 P.2d 765]), and that Elizabeth is entitled to an amount equivalent to one-half of Roy's contributions to the retirement fund during their marriage, since on retirement Roy is certain to receive those contributions. (*Id.,* at pp. 40-41, and p. 41,

---

[6]However, the pension may be reduced if the employee retires before he reaches age 55. (§ 8336, subd. (d).)

fn. 8.) (See also *In re Marriage of Jafeman,* 29 Cal.App.3d 244, 261 [105 Cal.Rptr. 483]; *Berry* v. *Board of Retirement,* 23 Cal.App.3d 757, 759 [100 Cal.Rptr. 549].)

Roy, however, contends that the trial court had no power to award Elizabeth one-half of his anticipated pension, because, on March 4, 1972, he had worked only 29 years and was not yet entitled to a pension. He relies on *French* v. *French,* 17 Cal.2d 775, 778 [112 P.2d 235, 134 A.L.R. 366], which held that a pension to which the husband would not be entitled "until he completes a service of fourteen years . . . and complies with all of the requirements of that service" is not subject to division as community property. "At the present time, his right to retirement pay is an expectancy . . . ." (See also *Williamson* v. *Williamson,* 203 Cal.App.2d 8, 11 [21 Cal.Rptr. 164].)

Although it is reasonable to expect reconsideration of the "expectancy" concept as articulated in *French* v. *French,*[7] we are bound by the ruling in that case.

■ At no time before either March 4 or May 30, the date the interlocutory decree was entered, was Roy's interest in an "immediate retirement" pension more than an "expectancy," because conditions precedent to eligibility for an "immediate retirement" pension had not been satisfied. That pension was payable no earlier than July 2, 1972, when Roy would have completed 30 years of service. (§ 8336, subd. (a).) The trial court, therefore, had no power, under *French* v. *French, supra,* to order Roy to pay retirement benefits to which he was not then entitled.[8]

---

[7]A hearing had been granted in *In re Marriage of Wilson,* 10 Cal.3d 851, 853 [112 Cal.Rptr. 405, 519 P.2d 165], "to ascertain the current viability of the rule of *French* v. *French* . . . that pension benefits which have not yet vested are a mere expectancy and not subject to division as community property." However, the court said that upon "further examination of the record it appears this issue is not properly before us because respondent wife expressly acquiesced in the *French* rule at the trial level and failed to cross-appeal from that portion of the judgment adverse to her interests. [Citation.] Accordingly, resolution of the issue must await timely presentation upon an appropriate record in another case."

[8]Elizabeth contends, ignoring the numerous amendments to the Civil Code, that the pension award was proper because Roy's interest would in fact vest before the final judgment of dissolution could be entered. True, formerly property acquired after the interlocutory, but before the final decree was entered, was community property. (*Brown* v. *Brown,* 170 Cal. 1, 4 [147 P. 1168].) However, the Civil Code was amended to solve that problem. (See *Brown* v. *Barham,* 242 Cal.App.2d 696, 703-704 [51 Cal.Rptr. 718].) Effective 1960, all property acquired by the husband after entry of the interlocutory decree was his separate property. (Civ. Code, § 169.2 [Stat. 1959, ch. 1469, § 1, repealed Stat. 1969, ch. 1608, § 3]; § 5119, subd. (b) [Stat. 1969, ch. 1608, § 8, amended Stat. 1971, ch. 1699, § 2]; see also § 5118 [Stat.

However, although Elizabeth had no present interest in Roy's "immediate retirement" pension, she had a very real interest in Roy's right to a "deferred retirement" pension which had become vested by any standard We have noted that if Roy had retired by March 1972—the cutoff date in these proceedings—he would have been entitled to "deferred retirement" under 5 United States Code, section 8338, subdivision (a), which provides that any employee who is "separated from the service" after five or more years of service is "entitled to an annuity beginning at the age of 62 years."

■■ "The law is settled in California that retirement benefits which flow from the employment relationship, to the extent they have vested [fn. omitted], are community property subject to equal division between the spouses in the event the marriage is dissolved. [Citations.]" (*In re Marriage of Fithian,* 10 Cal.3d 592, 596 [111 Cal.Rptr. 369, 517 P.2d 449].)

*"The right to retirement benefits 'vests' when an employee acquires an irrevocable interest in a fund created by his own contributions and/or the contributions of his employer.* The 'vesting' of retirement benefits must be distinguished from the 'maturing' of those benefits, which occurs only after the conditions precedent to the payment of benefits have taken place or are within the control of the employee." (*Id.* at p. 596, fn. 2.) (Italics added.)

In defining "vesting," *Fithian* refers to Kent, *Pension Funds and Problems Under California Community Property Laws* (1950) 2 Stan.L.Rev. 447. Because the concept of "vesting" as used in *Fithian* may not be entirely consistent with *Phillipson,* it is helpful to use Kent's hypothetical to illustrate the concept.[9]

1969, ch. 1608, § 8; amended Stat. 1971, ch. 1699, § 1].) Effective March 4, 1972, "earnings and accumulations" of separate spouses became the separate property of each spouse. (§ 5118.)

[9]In *Phillipson* v. *Board of Administration, supra,* 3 Cal.3d 32, the husband, at the time of the divorce, had left state employment and "enjoyed an immediate and unconditional right to withdraw his accumulated contributions plus interest . . . and . . . also possessed an *unconditional and vested right to a pension.* . . . Consequently, *his pension rights, having matured,* were 'property' subject to the jurisdiction of the court." (*Id.,* at p. 41.) The court continued: "While an employee continues in state employ, the nature and value of his retirement pension is contingent both upon his survival until retirement and his age at retirement. [Citations.] Thus the retirement benefits of a present employee are classed as an *expectancy,* and neither those rights nor their actuarial equivalent is divided or awarded as community property in a divorce proceeding. [Citations.]" (*Id.,* at p. 41, fn. 8.) (Italics added.)

*Phillipson* apparently did not consider the circumstance in which the husband has the right to quit and collect an immediate pension, but declines to do so. This problem was resolved in *Waite* v. *Waite,* 6 Cal.3d 461, 472 [99 Cal.Rptr. 325, 492 P.2d 13], in which the court held that where the contingency is completely within the employee's control—in *Waite,* whether a retired judge would accept temporary

The article posits a situation in which, if the employee's "employment continues for more than this minimum period [of three years], his right to receive benefits becomes vested. The amount of the benefit is determined by a formula which takes into account the duration of employment and proximity to the normal retirement date at the time the termination of employment occurs." (2 Stan.L.Rev., at p. 454.)

"For example, suppose that John Smith became an employee on January 1, 1946. . . . [¶] *Upon completion of the three years of employment, certain rights would vest in him*—the extent or amount depending upon his length of service and the proximity to his normal retirement date at the termination of his employment. It is only *these vested rights* that *constitute property to which the wife's community property interest should be able to attach. . . ." (Id.,* at p. 463.) (Italics added.)

"*The value of the community interest should be measured by the value that the vested right would have had if the employee's service had terminated upon the date of the divorce decree . . . .*"[10] (*Id.,* at p. 465.) (Italics added.)

■ Thus, under *Fithian,* Elizabeth had a vested interest in whatever pension Roy was entitled to receive on a "deferred retirement" basis computed as of March 1972, although, because the condition precedent to the government's payment of that pension was Roy's survival until 1978, that interest had not "matured" within the meaning of *Fithian.*

Elizabeth's interest in Roy's deferred retirement pension could be defeated only by his failure to retire from federal employment before March 1972. However, Roy may not defeat her interest by relying on a condition solely within his control. (*Waite* v. *Waite, supra,* 6 Cal.3d 461, 472.) Moreover, since, as noted, he did not, by March 1972, elect a full pension, even his death before 1978 when the pension becomes payable would not "unvest wife's present right to future payment of benefits.[11]

Concededly, in the circumstances of this case, Elizabeth's one-half in-

judicial assignments—his pension is "fully as secured, as 'vested,' as that of any other public employee." (See also *Bensing* v. *Bensing,* 25 Cal.App.3d 889, 893 [102 Cal.Rptr. 255].)

[10]This article was published in 1950, before the statutory changes noted in footnote 8, *ante.*

[11]One of the issues in this case is the "survivor's annuity" (§ 8341) and/or "lump sum benefits" (§ 8342). It is sufficient to note at this point that absent an affirmative election by the employee, the pension is not lost if the former employee dies before the pension becomes payable. (§ 8339, subd. (j).)

terest in Roy's "deferred retirement" rights is based on a fiction, since he did not retire before March 1972 and since his failure to elect a full pension by March 1972 could in reality be remedied in his favor. However, the fiction is no different from the fiction in *Waite* v. *Waite, supra,* that the husband, a retired judge, would remain retired and thus remain eligible for his pension. The policy is the same: The husband may not, by devices within his control, defeat the wife's right to what is community property.

The trial court has considerable latitude in determining Elizabeth's share of the "deferred retirement" pension and the method of payment. *In re Marriage of Wilson, supra,* 10 Cal.3d 851, 856, suggests that the pension rights need not be reduced to their "present value": "No valuation would even normally need to be made of total pension rights for if other community assets were divided equally, the wife could merely have been awarded a percentage of each pension payment despite the fact that such a method of payment subjects [wife] to the risk of losing the payments should the [husband] die before she does."[12]

Moreover, the trial court made clear, in denying Roy's motion for a new trial, that if it "cut the pension," it would "add to the spousal support."

The court, as noted, awarded Elizabeth $320 a month in spousal support; half of Roy's pension payments, about $815 per month, were to be offset against the spousal support. It is possible that in this case, Elizabeth will not be severely affected by the *French* v. *French* rule that requires us to reverse the trial court's order. However, she should not be dependent on the discretion of the court (Civ. Code, § 4801, subd. (a)) to provide her with the equivalent of what should be hers as a matter of absolute right (Civ. Code, § 4800, subd. (a).)

The potentially whimsical results of the *French* v. *French* rule are manifest in this case. The couple were married in 1941, and almost immediately husband became a federal employee. Some 28 years later—when he needed only two more years of employment for an immediate pension—the couple separated. Exclusive of the pension, the total community assets were $7,700. According to the record a mere one year's pension rights exceeded by several thousand dollars the total community assets of a 30-year mar-

---

[12]The proportion attributable to the community must, of course, be determined. (*In re Marriage of Wilson, supra,* at p. 855; *In re Marriage of Fithian, supra,* 10 Cal.3d 592, 595; *Bensing* v. *Bensing, supra,* 25 Cal.App.3d pp. 891-892.)

riage![13] Were it not for the early vesting policies of the federal civil service, Elizabeth would be totally stripped of her fair share of the only substantial community asset.

## II

### SURVIVOR'S ANNUITY AND LUMP SUM BENEFITS

The parties disagree concerning Elizabeth's rights to any amounts payable under the retirement plan after Roy dies. The parties' disagreement is not entirely clear. At trial, Roy stated that he intended to take a full pension "unless I remarry. . . ." If the retiring employee elects to receive a full pension, the survivor is not entitled to an annuity after the retired employee dies. (§§ 8339, subd. (j); 8341, subd. (b).) However, the interlocutory decree provides that if Elizabeth "survives Roy, she will succeed to such benefits as are allowable under the retirement agreement."

At the hearing on Roy's motion for a new trial, Elizabeth expressed concern that Roy had "certain alternatives" under the retirement system which could deprive her of her entire share. Elizabeth proposed that an actuarial value be placed on Roy's pension, a suggestion that the trial court apparently did not rule on in denying Roy's motion for a new trial.

In her cross-appeal, Elizabeth asks this court to take judicial notice of the fact that in connection with a contempt order to show cause in December 1972, it developed that Roy, in July 1971—that is before the trial or the judgment—had changed the beneficiaries to any lump-sum amounts payable after his death from Elizabeth to the children. She contends that the trial court, in the interlocutory judgment, made an "unenforceable order regarding the division of the Federal Civil Service retirement benefits. . . ." Elizabeth's reply brief indicates that the substance of her complaint is that the trial court erred in not making a clear disposition of all benefits that might be payable under the federal retirement system.

To understand Elizabeth's contention, the survivor provisions of the retirement system must be examined. Roy's contributions (§ 8334, subd. (a)(1)) combined with the government's contributions (§ 8348) purchase, in effect, a financial retirement package.

---

[13] Indeed, the amount of the pension that will ultimately be payable to Roy at age 62 under the theory that he could have retired before March 1972 is, again, a matter of chance. Roy was born in January 1916, and thus turned 55 in January 1971—which just happens to be after the parties separated, but before Civil Code section 5118 took effect. Thus, just as the fortuity of dates prevents Elizabeth, under *French* v. *French, supra,* 17 Cal.2d 775, from fully participating in Roy's real pension rights, so the fortuity of dates allows her in this case to participate at a higher level than if the parties had dissolved their marriage a year or so earlier.

This package consists of: (1) An employee's pension on or after retirement (§§ 8336, 8337, 8338), which pension may be reduced to provide for a survivor's pension (§§ 8339, 8341). (2) In addition, whether or not the government has paid both an employee's pension and a survivor's pension, a lump-sum benefit may be payable to a designated beneficiary (§ 8342, subds. (b), (c)), consisting of the difference between the amount paid out in pension form and the employee's contributions to the retirement fund. (§ 8342, subds. (d) through (g).)

At first glance, it would appear that Elizabeth has an interest in the entire pension package: employee's pension, survivor's pension, if any, and lump-sum death benefits.

True, federal law specifically limits payment of a survivor's annuity—with exceptions not relevant here (e.g., § 8341, subd. (e))—to situations in which the retired employee is "survived by a spouse to whom he was married at the time of retirement, or by a widow . . . whom he married after retirement, . . ." (§ 8341, subd. (b))—but while these federal restrictions might affect Elizabeth's right to assert a claim against the federal government, they would not affect the court's power to order Roy to pay to Elizabeth as her share of the community, an amount equivalent to her ratable share of a survivor's pension.

It is also true that federal law permits the employee to defeat the survivor's pension if the employee "notifies the Civil Service Commission in writing at the time of retirement that he does not desire any spouse surviving him to receive an annuity . . . ." (§ 8339, subd. (j).) Similarly, federal law provides that "a present or former employee . . . may designate a beneficiary or beneficiaries for the purpose of this subchapter [lump sum benefits]." (§ 8342, subd. (b).)

However, *Carlson* v. *Carlson*, 11 Cal.3d 474 [113 Cal.Rptr. 722, 521 P.2d 1114], construing a federally sponsored life insurance policy (§§ 8701-8716)—which involved a designation-of-beneficiary statute almost identical to that involved in the retirement system lump-sum provision (see §§ 8342, 8705)—held, simply, that the statutory system did not provide any reason "to hold that Congress has indicated with force and clarity that the benefits constitute the separate property of the insured." (11 Cal.3d at p. 480.)

Without belaboring the point, it is sufficient to note that California's community property laws do not conflict with federal civil service employees' retirement system provisions governing survivor's annuities or lump-sum benefits.

The problem is, however, that—issues of federalism aside—a series of California Supreme Court cases has apparently established the rule that the wife's vested rights in the husband's pension plan are limited to amounts payable to him while he is living.

In *Benson* v. *City of Los Angeles,* 60 Cal.2d 355 [33 Cal.Rptr. 257, 384 P.2d 649], the husband, who had been collecting his pension before the parties were divorced, remarried after his divorce. (*Id.,* at p. 358.) His pension plan provided for survivor's benefits to the "widow." (*Id.,* at p. 359.) After he died, both his former and current wives filed claims for the widow's pension benefits, and, eventually both women sued the City.

The court's language must be noted carefully. "It is established that pension rights of a municipal employee are an integral part of his earnings. [Citation.] *Moreover, a widow's right to receive a pension after the death of her spouse is an element of her husband's contractual compensation and is earned by his performance of services for a municipality.* [Citation.] It necessarily follows that pension rights which are earned during the course of a marriage are the community property of the employee and his wife. [Citations.]

". . . . . . . . . . . . . . . . . . . . .

"In view of the foregoing [the former wife] claims that she alone is entitled to the community assets after [the husband's] death, and that it was a denial of due process to deprive her of such property right. . . . [The former wife's] claim contemplates both that she was possessed of a property right and that she was improperly deprived thereof.

". . . Conceding the community nature of the pension, it follows that the community possessed only such an interest therein as [the husband's] employment contract provided. The city need perform only in accordance with the contract as the terms thereof are contained pursuant to the charter provisions. That contract provided for payments to [the husband] during his lifetime and thereafter for the payment of benefits to [the husband's] 'widow.' Certainly if [the husband] had married and divorced several wives during the time he was employed by the city, each former wife would not be entitled to a widow's pension. . . .

"On the face of the contract entered into between the community and the city, [the former wife] was not entitled to assert any personal rights other than those of the community, which were to enforce payments to [the husband] and after his death to his widow. [Citation.]

*"This is not to say that upon a division of the community estate she could not have participated therein.* Undoubtedly she had an interest which she could have asserted in the payments to [the husband] during his lifetime, had she sought to do so. But after [the husband's] death the only right remaining was to enforce the city's covenant to make payments to the 'widow.' " (60 Cal.2d at pp. 359-360.) (Italics added.)

Thus, *Benson* apparently held that although, as between the parties, the wife had an interest in the husband's entire pension package, once the husband died these rights could not be asserted against the former employer.

In *Phillipson* v. *Board of Administration, supra,* 3 Cal.3d 32, the trial court, in dividing community property, had awarded the wife all of the husband's credits in the California state employees' retirement system fund. (*Id.,* at p. 38.) When the husband attempted to collect his pension, the former wife sued to enjoin the employer from paying that pension. The problem was whether the wife had a sufficiently "vested" interest to compel the employer to pay the deposited funds to the wife. The court explained *Benson:*

"Thus, after his retirement [the husband] had a present and unconditional right to pension payments; this right, therefore, composed a community asset which could be divided upon divorce. But this right to a lifetime pension or to accumulated contributions did not survive [the husband's] death. The only right that remained after death was that of his widow to a widow's pension; that right, however, was a conditional one, payable only if [the husband] left a widow and only to the person so described." (*Id.,* at pp. 42-43.)

"In the instant case, at the time of the divorce the pension rights of [the husband], like the lifetime pension of August Benson and unlike the widow's pension in that case, were unconditionally payable." (*Id.,* at p. 43.)

It should be noted that, in general, the California state employees' retirement system parallels the federal system with respect to survivor's pensions and lump-sum benefits. (Gov. Code, §§ 21332-21335.) However, the issue before the court in *Phillipson,* was apparently only the husband's current pension rights. The court was not required to decide what the total pension package involved *as between the husband and the wife.*

*Waite* v. *Waite, supra,* 6 Cal.3d 461, involved a dispute between the parties, rather than a claim by a former spouse against the retired spouse's

former employer. Yet, the court reiterated the basic concepts of *Benson* and *Phillipson:* "[B]oth *Benson* and *Phillipson* clearly distinguish the spouse's *vested* community interest in the employee's lifetime pension." *(Id.,* at p. 470 [italics in original].) And, quoting *Phillipson:* " 'In *Benson* the court clearly differentiates [the husband's] vested rights upon retirement from his 'widow's' contingent rights.' " *(Id.,* at p. 470, fn. 5.)

Finally, we are led back to *In re Marriage of Wilson, supra,* 10 Cal.3d 851, in which the court rejected the husband's contention that his pension rights should be reduced to their present value. "No valuation would even normally need to be made of total pension rights for if other community assets were divided equally, the wife could merely have been awarded a percentage of each pension payment despite the fact that such a method of payment subjects [the wife] to the risk of losing the payments should the [husband] die before she does. (See *Waite* v. *Waite, supra,* at pp. 473-474; *Bensing* v. *Bensing, supra,* at p. 894.)" *(Id.,* at p. 856.)

▋ Reading the cases discussed above, we are bound to hold that Elizabeth's entitlement in this case is limited to Roy's pension rights while he is living, and that she has no "vested" interest in any amounts payable after his death, even though these amounts are part of the pension package purchased with community funds.

We do not believe the rule which we must follow is fair.[14] Roy's pension rights constitute a bundle to which Elizabeth, as a partner in the community during the years of marriage contributed her equal share. Why should she be deprived of her right to any single stick in the bundle? (See Kent, *supra,* 25 Stan.L.Rev., at pp. 462-463.) We must, however, follow *Benson, Phillipson* and *Wilson.*

## CONCLUSION

Elizabeth is entitled to share in Roy's pension computed on the assumption that he retired in March 1972, and would be eligible for a deferred pension when he reaches the age of 62. Since *Wilson* does not in all cases forbid placing a valuation on the pension rights, the trial court is free to set a present value on the deferred pension, and is free to require Roy to

---

[14]The apparent reason for the rule in *Wilson* that the wife be awarded only a percentage of each pension payment is a wish to limit the immediate burden on the husband where the primary, if not the sole, community asset is the prospective pension. However, where, as here, the pension package allows a survivor's pension and possibly lump-sum death benefits, any hardship is created by the husband. To avoid the burden of the husband's paying the wife projected pension amounts before he receives them, he need only designate the wife as survivor and beneficiary.

commence paying it in appropriate installments when he begins to receive his "real" immediate pension. The court is also free to adjust the spousal support provisions in any equitable manner.

Elizabeth does not, however, have a right to share in any benefits that may be payable after Roy dies.

The judgment is reversed for a redetermination of the community property and spousal support provisions consistent with the views expressed in this opinion.

Ashby, J., and Hastings, J., concurred.