[Civ. No. 25543.   Second Dist., Div. Three.   Apr. 26, 1962.]

JEANNE WILLIAMSON, Plaintiff and Appellant, v. LYLE WILLIAMSON, Defendant and Respondent.

Guerin & Guerin and John J. Guerin for Plaintiff and Appellant.

David C. Marcus for Defendant and Respondent.

FILES, J.—This is plaintiff's appeal from a judgment granting her a divorce on the ground of cruelty and awarding to her community property, child custody, child support and token alimony. She contends that she did not receive enough money or property.

The evidence is not in substantial conflict as to the financial circumstances of the parties at the time of the trial. Defendant is a Los Angeles policeman with a take-home pay of $171 every two weeks, after deduction of $51 applied toward liquidation of the $2,241 then owed to the police credit union. During recent years defendant's gross income has been between $7,000 and $8,000 per year, including earnings from

outside jobs. He is not working much in outside jobs now because his medical record is unsatisfactory and the department has limited him to four hours per week outside work. The community property consists of two old automobiles worth $500, household furnishings worth $2,000, and a home valued between $16,000 and $20,000 against which about $7,000 is owed. Plaintiff is a housewife. There are four children, the eldest of which, age 17, earned about $1,100 in 1959.

At the conclusion of the trial the court announced that the property would be divided as follows: plaintiff would receive the home, the furnishings, and the 1951 automobile; defendant would receive the 1937 Ford. The parties were ordered to join in obtaining a loan on the property, from which $2,700 would be paid to defendant and from which he was to pay off the debt to the credit union. (Defendant had another debt of $350 for which the community property was liable.) In the event of a sale of the home defendant would receive $2,000 from the proceeds. Defendant was ordered to pay to plaintiff as child support $11 per child per week, to keep up the insurance, to pay one-half of extraordinary medical expenses, to pay token alimony of $1.00 per year, and to pay plaintiff's attorney $80 at the rate of $20 per month.

Before any formal findings or judgment were filed plaintiff substituted new counsel, who made a motion to reopen. The purpose was to show that defendant had contributed community money to the fire and police pension fund of Los Angeles, and that he had an interest in that fund which was community property. When the motion was argued it was stipulated that $3,694.79 had been deducted from defendant's salary and placed in the pension fund during his 13 years as a policeman. The motion to reopen generally was denied.

Thereafter the court gave judgment in conformity with its prior announcement except that the amount to be paid to defendant upon sale of the house was reduced from $2,000 to $1,000.

Plaintiff's contention is that she has received less than one-half of the community property, and that the trial court should have reopened the evidence so as to allow plaintiff to call an actuary who would testify that the present value of defendant's pension, if he retired after 20 years' service, was $34,054.

The terms of the Los Angeles police pension system are set forth in article XVII of the Los Angeles City Charter, of which the court takes judicial notice. (Cal. Const., art. XI, § 8, subd. (g).) The charter provides that a policeman will receive certain benefits in the event he is retired for disability or if he retires after at least 20 years' service. Members of the family of a deceased policeman are also entitled to certain benefits. No provision is made for payment of any money out of the fund to any policeman unless and until he retires. The Los Angeles police system, unlike many other retirement plans, makes no provision for the withdrawal of the member's contributions if his service should be terminated prior to retirement.

*Cheney* v. *City & County of San Francisco Employees Retirement System*, 7 Cal.2d 565 [61 P.2d 754], involved the death benefit under the San Francisco employees' retirement system. Cheney commenced employment in 1929, married plaintiff in 1932, and died in 1933. A death benefit of $1,200 plus accumulated contributions became payable to someone. Cheney had designated his mother as beneficiary. The trial court held that the sum was community property and awarded one-half to the widow. The Supreme Court said:

"It is the appellant's theory that the sum of $1200 was, as found by the court, 'set aside' by the city and county upon the admission of Cheney into its employ on March 17, 1929, and thus that that sum constituted property of the decedent acquired prior to his marriage. The act of 'setting aside' such fund did not thereupon vest in the decedent a property right therein. That right did not accrue until the event upon which payment was contingent had occurred. [Citations.] In the present case the contingent event was the death of the employee Cheney." (7 Cal.2d at p. 568.)

The Supreme Court then concluded that this death benefit constituted earnings and hence was community property unless the spouses had agreed otherwise. The judgment was reversed on the ground that the spouses had made a valid agreement that the earnings of each would be separate property.

*Crossan* v. *Crossan*, 35 Cal.App.2d 39 [94 P.2d 609], was a divorce case in which the court awarded to defendant, as community property, the sum of $811.67, the value of his interest in the State Employees' Retirement Fund. Defendant appealed, claiming that this interest was not property and should have been ignored and that with this interest

omitted, the division was unfair. The appellate court pointed out that under the state retirement law defendant was entitled to withdraw his contributions if his employment were discontinued before retirement, and concluded that the amount of such refundable contributions constituted community property.

It is to be noted that the *Crossan* case involved only the amount of the fund which was available for immediate withdrawal by the member. No issue was before the appellate court concerning the retirement benefits.

*French* v. *French,* 17 Cal.2d 775 [112 P.2d 235, 134 A.L.R. 366], was a divorce case involving benefits payable to a retired member of the United States Navy. The Supreme Court said: "Another point raised by the respondent is that retirement pay is community property because it is compensation for services rendered in the past. That is correct, but under the applicable statutes the appellant will not be entitled to such pay until he completes a service of fourteen years in the Fleet Reserve and complies with all of the requirements of that service. At the present time, his right to retirement pay is an expectancy which is not subject to division as community property." (17 Cal.2d at p. 778.)

█ The principle established by these cases is that pensions become community property, subject to division in a divorce, when and to the extent that the party is certain to receive some payment or recovery of funds. █ To the extent that payment is, at the time of the divorce, subject to conditions which may or may not occur, the pension is an expectancy, not subject to division as community property. (See Kent, *Pension Funds and Problems under California Community Property Laws* (1950) 2 Stan.L.Rev. 447, 463, 465.)

Plaintiff argues that a pension becomes divisible community property when it "vests," citing the *Cheney* case, *supra,* and that a Los Angeles policeman's pension "vests" as soon as he has accepted employment, citing *Dryden* v. *Board of Pension Commrs.,* 6 Cal.2d 575, 579 [59 P.2d 104]. The difficulty is that the word "vest" has been used in more than one sense. In the *Cheney* case, involving a contest between beneficiaries, the pension was said to vest when the event on which payment was contingent occurred. In decisions involving the enforcement of pension claims against the employer, as in the *Dryden* case, the pension is said to vest when employment begins,

meaning that the benefits of the pension system may not be withdrawn arbitrarily by the employer. The pension rights of defendant here are "vested" in the latter sense even though payment is subject to contingencies which may or may not occur; but the defendant's pension is not "vested" as that term is used in the *Cheney* case, or in the Kent article cited above.

The facts of this case afford an illustration of the impracticability of appellant's theory. Here all of the immediately available assets, except a 1937 Ford and cash needed to pay debts, have been turned over to plaintiff. Defendant has been ordered to pay child support measured not by what the children need but by defendant's limited ability to pay. If the court were to treat this retirement expectancy as an annuity, having a present value of $35,000, this would not produce another penny for the immediate support of plaintiff and the children. Defendant remains subject to the further order of the court, both for child support and for alimony. If, while these obligations for support continue, this pension right can be converted into spendable cash, the court will have opportunity to make an appropriate modification.

Plaintiff criticizes the findings for lack of specific facts, but any such defect, if it be such, is harmless. It is clear enough that she has received substantially all that defendant had to give as of the time of the trial. The amount awarded for support was not an abuse of discretion.

The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.

A petition for a rehearing was denied May 16, 1962, and appellant's petition for a hearing by the Supreme Court was denied June 20, 1962.