PEDRO J. MALDONADO DEL VALLE, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, Respondent; LUZ MARÍA VÁZQUEZ, Intervener.

No. O-68-265.     Decided January 27, 1972.

*José F. Quetglas Alvarez* and *Francisco M. Vázquez Santoni* for petitioner. *Benicio Sánchez Castaño, Benicio Sánchez Rivera, Gustavo Adolfo Del Toro,* and *Ana R. Rodríguez Olazagasti* for intervener.

MR. JUSTICE TORRES RIGUAL delivered the opinion of the Court.

We consider in this petition whether in our legal code a retirement pension acquired during a marriage constitutes community or separate property. The pertinent facts were stipulated by the parties.

Pedro J. Maldonado was married to Luz María Vázquez on November 29, 1946. At the time, Maldonado had completed 3 years and 5 months service in the Armed Forces of the United States. Twenty years later, in September 1963, he was retired with the rank of Major and with a retirement pension of $391.87. Their marriage was dissolved by virtue of a divorce decree on September 13, 1966.

Relying on *Rivera v. Rodríguez*, 93 P.R.R. 20 (1966), the trial court held that the pension constituted community property because it was acquired during the marriage. Consequently it determined that half of the pension corresponded to Luz María Vázquez, intervener herein.[1]

An explanation is in order. *Rivera v. Rodríguez, supra,* does not involve the determination of the nature of a retirement pension. That case refers to the nature of some federal bonds acquired with money from the regular payments received by the husband because of a disability which he sustained during his marriage. We held in that case that the regular payments arising from a pension for disability constituted assets of the conjugal partnership. The ground for our decision was that the regular payments substituted the income which would have been perceived if the disability had not occurred. That is, they substituted the salaries which, as such, are considered community property. Section 1301, Civil Code, 31 L.P.R.A. § 3641.[2]

---

[1] The conjugal partnership has not been liquidated yet and among its assets there are, among other properties, a house located at Garden Hills Development, another at San Francisco Development, and an automobile repair concern.

[2] "To the conjugal partnership belong:

"(1) Property acquired for a valuable consideration during the marriage at the expense of the partnership property, whether the acquisition is made for the partnership or for one of the spouses only.

"(2) That obtained by the industry, salaries, or work of the spouses or of either of them.

"(3) The fruits, income, or interest collected or accrued during the marriage, coming from the partnership property, or from that which belongs to either one of the spouses.—Civil Code, 1930, § 1301."

Likewise the property acquired with them is considered community property. *Id.* Since the bonds were purchased *during the marriage* with money from the regular disability payments, they constitute community property. We did not consider the nature of the regular payments after the marriage was dissolved. But it is obvious that if they substituted the income that would have been gained during the marriage, had the disability not been sustained, at the dissolution of the conjugal partnership, said income, being salaries, lose their community property nature and come to be the personal property of whoever gained them. Therefore, when the trial court compared in the case at bar the payments of the retirement pension with regular disability pension payments, it should have declared, as a logical consequence of that conclusion, that the payments of the retirement pension were of a separate nature upon the dissolution of the conjugal partnership. It held the opposite.

The foregoing explanation having been made, we will proceed to consider the nature of the retirement pension or annuity for years of service, that is the issue here involved.

The stipulation signed by the parties merely expresses that it has to do with a retirement pension from the United States Armed Forces. It does not specify the type of pension nor the law that created it. For the purposes of the case, we assume that it deals with the annuity payable for years of service which is governed by Chapter 367 of Title 10 of the United States Code, §§ 3911 to 3929. Section 3911 of this title provides for the retirement of an officer from the United States Army after 20 years of service, at least 10 years of which have been served as a commissioned officer. Section 3991 establishes the formula for the computation of the annuity based on the monthly basic pay multiplied by 2½ percent of the years of service credited to him. A plan is also established for the protection of the family of retired soldiers. According to said plan the participant, upon his retirement,

may elect to receive a reduced retirement annuity and with the difference provide, as per actuarial computation, an annuity of not more than 50% nor less than 12% of his retirement pay. This optional annuity can only be exercised on behalf of the spouse for as long as she lives or remains unmarried or on behalf of his children. 10 U.S.C. §§ 1431–1446. Likewise, death benefits are granted payable to the beneficiaries designated by the participant. 10 U.S.C. § 1434.

This retirement system for the United States Armed Forces is similar to the Retirement System of the Employees of the Government of Puerto Rico and its Instrumentalities created by Act No. 447 of 1951, 3 L.P.R.A. §§ 761–788,[3] except that the former does not require contributions from the participants while the latter requires contributions not only from the participant but also from the Commonwealth. As we will see this requirement is not relevant to the question in controversy herein.

The purpose of these annuities for years of service is to protect participants who have rendered public service for several years, providing them with a more or less adequate amount for their subsistence.[4] It is a personal right that is extinguished upon the participant's death.[5] In the largest number of the cases the pension consists of modest sums of money hardly enough to take care of the participant's needs. Actually, the average monthly pension in the Retirement

---

[3] Act No. 447 of 1951 provides for the payment of a retirement annuity to the employees of the Commonwealth, 3 L.P.R.A. § 766, right to elect to receive a reduced annuity in order to protect the participant's family, *id.* § 768, and death benefits, *id.* § 773.

[4] These retirement systems also permit the State to renew its personnel when their efficiency starts to deteriorate, be it for reasons of age or of disability, facilitating the incorporation to public service of young and vigorous personnel.

[5] Section 24 of the Retirement Act prescribes that the right to retirement annuities is a personal right of the recipient thereof, and its assignment or transfer shall be void. It also excepts it from attachments and from any judicial proceeding. 3 L.P.R.A. § 785.

System of the Employees of the Government of the Commonwealth of Puerto Rico is less than $200. In fact, 88% of the retired employees at this moment receive a pension of less than $200 monthly.[6] The average varies in the different systems. Thus, in the University of Puerto Rico the average retirement annuity is $201.82,[7] in the Teachers' Retirement System it is $112.75, and in the Water Resources Authority it is $190.70.[8] It suffices to bear in mind that in Puerto Rico a family income of less than $2,000 annually is considered within the limits of poverty in order to understand the economic consequences of dividing these pensions between the husband and wife. See the anthology "Problems of Social Inequality in Puerto Rico" of the Social Science Research Center of the University of Puerto Rico in which there appears a study on *"Who are the Poor in Puerto Rico?"* by Professors Celia F. Cintrón and Harry B. Levine.[9] (Stencil.)

As a general rule, the statutes which create these pensions establish a minimum requirement of years of service, twenty in the case at bar, a minimum age for retirement, and the participant's contribution. The amount of the pension varies with the age of the individual, his years of service and the amount of salary received. The years of service as well as the participant's contributions constitute the cause for the pension.

---

[6] Information furnished by the Personnel Office of the Government of the Commonwealth of Puerto Rico.

[7] Information furnished by the Retirement Office of the University of Puerto Rico.

[8] Information furnished by the Teachers' Retirement Board and the Personnel Office of the Water Resources Authority.

[9] In this study reference is made to other studies carried out by government agencies in which different amounts are set to delimit the minimum family income. For example, in the comparative study "Income and Expenditures of the Family. Puerto Rico, 1963" prepared by the Department of Labor of the Commonwealth in 1963, the amount of $4,056 is adopted as minimum family income required for the "indispensable basic needs."

A literal application of § 1301 of the Civil Code would only dispose of the matter acknowledging its apparent community nature, and no more.[10] But it also would alter the finality of the pension and its strictly personal nature. As we have seen it is a question of modest amounts for the subsistence of those retired during their years of greater economic helplessness.

The doctrine considers that the strictly personal nature of these annuities determines their separate nature. It is a question of assets *intuitu personae*—that is, in consideration of the person—which on account of their own nature are excluded from the assets of the partnership. See: La Cruz Berdejo, *Derecho de Familia* 203–204 (Librería Bosch, 1966), IV-1 Puig Brutau, *Fundamentos de Derecho Civil* 29, III Planiol and Ripert, *Tratado Práctico de Derecho Civil Francés* 225, 226, 229, 232, 453 (1938), VI Colin and Capitant, *Curso Elemental de Derecho Civil* 163 (3d ed.), Tedeschi Guido, *El Régimen Patrimonial de la Familia* 92 (Ediciones Jurídicas Europa-América, 1954), Fortuny Comaposada, *Régimen de Bienes en el Matrimonio* 243 (Colección Nereo), Gómez, José J., *Régimen de Bienes en el Matrimonio* 91–92 (Editorial Temis, Bogotá, 3d ed.), Vaz Ferreira, Eduardo, *Tratado de la Sociedad Conyugal* 392 and 393 (1959, Montevideo, Uruguay).

Josserand affirms that certain property is considered separate because it is repugnant, because of its very nature, to any classification as community property. The repugnance, he explains, may be attributed to the unassignability of the asset or to its personal nature. Among these assets he specifically mentions retirement pensions. III-I *Derecho Civil* 29 (1951).

Planiol and Ripert even though they reject the unassignability as the controlling test, nevertheless, they agree with Josserand in that retirement pensions are of a separate

---

[10] See, in footnote No. 2 the text of § 1301.

character because they constitute *intuitu personae* assets. *Op. cit.* We are told at page 232 of the aforementioned work:

". . . If the retirement pensions are excluded from community property it is due, exclusively, to the fact that they are *intuitu personae* assets that serve to guarantee the subsistence of the persons to whom they are paid: it would be inadmissible that, in case of divorce or in case the beneficiary of the annuity survives at the dissolution of the marriage, the recipient of the pension would have to divide the future installments or payments with the ex-spouse or his or her heirs . . . . In other words, if retirement pensions and other similar ones are considered personal property, it is not due to its unassignability, but to its finality, that is strictly personal."

Colin and Capitant also express an identical view. At page 163 of their aforementioned work they say:

"Retirement or disability pensions are constituted *intuitu personae* to compensate the services rendered by the interested party, or the wounds or diseases contracted by him while rendering such service. Said pensions are, therefore, of individual nature and they do not come to increase the community property. Consequently those entitled to receive these pensions retain their personal benefit when the community disappears. Would it not be absurd that half of those pensions pass at that instant to the other spouse or his or her heirs?"

In Spain, La Cruz Berdejo welcomes the same ground to support the separate nature of the pension:

"a) In this last sense, then, even though they are not related to the person, and besides, are granted as compensation for a typical community activity, they, nevertheless, should be classified as separate property because of a marked *intuitu personae* character, pensions received by holders of certain decorations, retirement of soldiers and civil officers, worker's retirement, and old-age pensions, those for former ministers, etc., if the spouse of the pensioner dies, the latter will not have to share the amount of the pension with his heirs." *Op. cit.* at 204.

■ Finally, notwithstanding the manner of acquisition, the right to a retirement annuity is strictly personal never

increasing the community assets. It is proper, nevertheless, to note a difference between the right in itself and the amounts credited monthly by virtue of that right. The latter have rather the nature of civil fruits, and this is what makes it a community property provided they are gained during the marriage. Section 1303 of the Civil Code, 31 L.P.R.A. § 3643. See also, IX Manresa, *Comentarios al Código Civil Español* 200–203. *A contrario sensu,* once the marriage is dissolved, said amounts increase solely the private property of the person entitled to the pension.

The intervener maintains that if the pension is not declared community property the woman's rights would be harmed. We do not agree.

The rule set forth here is not only applicable to this case but it shall govern the decisions in future cases where the recipient of the pension may be a man or a woman. The intervener's argument vanishes if we keep in mind that in the retirement systems of the government of Puerto Rico there are proportionately as many women as men. At present there are approximately 72,000 participants, out of which 37,500 are women,[11] paying dues to the Retirement System of the Employees of the Government of Puerto Rico. That, without considering that in the Teachers' Retirement System, of a total of 27,141 participants, 19,891 are women,[12] that is, about 3 women for each participating male. If any sector may feel protected by our construction it is precisely the thousands of Puerto Rican women who work hard paying dues for a pension that in the majority of the cases will be the only source of income in old age; a modest sum which is divided would not be sustenance. Our construction acknowledges the social and economical equality of a woman in the economic system of the conjugal partnership.

---

[11] Figures furnished by the Office of Personnel of the Commonwealth of Puerto Rico.

[12] Figures furnished by the Teachers' Retirement Board.

In the case at bar the intervener's right to alimony provided by § 109 of the Civil Code, 31 L.P.R.A. § 385,[13] remains untouched. In the determination of this right, of course, the amount of the appellant's pension may be considered.

The approach of the jurisdictions in the United States, where the community property in marriages prevails, is different from ours. Over there, as a general rule, it depends on how or when the pension is acquired. See: *Problems in Classification of Particular Property Under Community Property Regimes*, 25 La. L. Rev. 139; I De Funiak, *Principles of Community Property* 195 *et seq.*; *French* v. *French*, 112 P.2d 235 (Cal. 1941); *Williamson* v. *Williamson*, 21 Cal. Rptr. 164; *Packer* v. *Board of Retirement*, 217 P.2d 666 (Cal. 1960); *LeClert* v. *LeClert*, 453 P.2d 755 (N.M. 1969); *Kirkham* v. *Kirkham*, 335 S.W.2d 393 (Texas 1960). On the other hand, the statutes in those jurisdictions are not uniform and neither are the case law doctrines. IV Puig Brutau, *Fundamentos de Derecho Civil* 593; *Morris* v. *Morris*, 419 P.2d 129 (Wash. 1966); *Kirkham* v. *Kirkham, supra; Dillard* v. *Dillard*, 341 S.W.2d 668 (Texas 1961); *Berg* v. *Berg*, 115 S.W.2d 1171 (Texas 1938). One of the most common difficulties in these jurisdictions is produced when at the moment of the dissolution of the conjugal partnership the right to a pension has not been acquired. The tendency among several of the courts in these cases is to consider the right to a pension as an expectancy not subject to division. *French* v. *French, supra; Williamson* v. *Williamson, supra.* When the participant has complied with the minimum requirements for the pension—age and years of service—it is then considered an acquired

---

[13] Section 109 of the Civil Code provides:

"If the divorced wife, in whose favor judgment was rendered, has not sufficient means of subsistence, the Superior Court may allow her, in its discretion, an alimony out of the income, earnings, salary, or property of her divorced husband, which alimony shall not exceed one-fourth of the income, earnings, or salary received."

right subject to division. *Kirkham* v. *Kirkham, supra; Mora* v. *Mora,* 429 S.W.2d 660 (Texas 1968).

The status of the laws which in those jurisdictions regulate the conjugal partnership assets has been described as chaotic. Friedman, *Matrimonial Property Law* 133 (1955, The Carswell Company Ltd., Toronto, Canada).

All the foregoing suffices to dispose of the cases referred to in the intervener's brief.

Judgment will be rendered reversing the judgment appealed from herein and the case remanded for further proceedings not inconsistent with this opinion.

Mr. Chief Justice Negrón Fernández took no part in the decision of this case.