Filed 6/24/13

# IN THE SUPREME COURT OF CALIFORNIA

In re the Marriage of JULIE R. GREEN      )
and TIMOTHY P. GREEN.                      )
                                           )
JULIE R. GREEN,                            )
                                           )
        Appellant,                         )
                                           )         S203561
                                           )
        v.                                 )
                                           )         Ct.App. 1/4 A129436
                                           )
TIMOTHY P. GREEN,                          )
                                           )         Contra Costa County
        Respondent.                        )         Super. Ct. No. D0801292
_____)

Retirement benefits attributable to service rendered during a marriage are community property. In this case, the husband, a firefighter, has retirement benefits that are part community property and part his own separate property. During the time of the marriage, he exercised his right to purchase four years' worth of additional retirement credit for his premarital military service. He had to pay to obtain this additional credit, which he elected to do in installments, some of which came from community property. The value of the additional credit substantially exceeds the cost of obtaining it. We must decide how much, if any, of the value of the four additional years of credit is community property.

What matters in determining whether retirement benefits are community or separate property is the person's marital status when the services on which the benefits are based were rendered. Here the husband rendered the military

1

service before the marriage. Accordingly, we conclude that, except for the community's contribution to the cost of obtaining the credit, the four years of additional credit are the husband's separate property.

The trial court ordered the husband to pay the wife one-half of the amount the community expended to obtain the credit plus interest. We conclude that the trial court acted within its discretion in using this method to compensate her for her share of the community's interest in the property. We reverse the judgment of the Court of Appeal, which reached a different conclusion.

## I. FACTS AND PROCEDURAL HISTORY

We draw these facts largely from the Court of Appeal opinion.

Timothy P. Green (husband) served in the United States Air Force for four years, from July 23, 1982, to May 1, 1986. On June 16, 1989, he began working as a firefighter for the Dougherty Regional Fire Authority in Dublin, which participated in the California Public Employees' Retirement System (CalPERS). At that time, husband had the right to buy up to four years of service credit towards his retirement benefits for his military service. Husband married Julie R. Green (wife) in May 1992.

In July 1997, the Dougherty Regional Fire Authority merged with the Alameda County Fire Department, which also participates in CalPERS. Husband continued to work for the Alameda County Fire Department.

On August 1, 2002, husband exercised his right to buy four years of service credit for his military service. He elected to pay for the purchase under an installment plan, paying $92.44 twice each month through payroll deductions for 15 years, scheduled to end in July 2017. Before the parties separated on October 1, 2007, $11,462.56 of community funds had been used toward the purchase of the military service credit.

2

Wife filed a petition for dissolution of the marriage in March 2008.  The parties disputed whether to characterize husband's military service credit as separate or community property.  After a trial, the trial court ordered that the military service credit portion of husband's CalPERS pension be awarded to him as his separate property.  The court also ordered husband to pay wife $6,699.54, representing half of the installment payments made with community funds toward the military service credit, plus interest at the rate of 6 percent.

Wife appealed, challenging the characterization of the military service credit as husband's separate property.  The Court of Appeal reversed the judgment.  It concluded that, "because the military service credit was purchased with community funds during the parties' marriage, it was community property" and remanded the case to the trial court to determine the proper allocation of that property.

We granted husband's petition for review.

## II. DISCUSSION

We recently summarized the applicable legal principles.  In general, all property that a spouse acquires during marriage before separation is community property.  (Fam. Code, §§ 760, 770.)  Community property may include the right to retirement benefits that the employee spouse accrues as deferred compensation for services rendered.  The right to retirement benefits is a property interest.  To the extent that such a right derives from service during marriage before separation, it is a community asset.  We review de novo the trial court's characterization of service credit as community or separate property.  (*In re Marriage of Sonne* (2010) 48 Cal.4th 118, 124 (*Sonne*).)

Husband is a member of CalPERS.  "Members of CalPERS, once vested, participate in a defined benefit retirement plan, which supplies a monthly retirement allowance under a formula comprising factors such as final

3

compensation, service credit (i.e., the credited years of employment), and a per-service-year multiplier.  The retirement allowance consists of an *annuity* (which is funded by member contributions deducted from the member's paycheck and interest thereon) and a *pension* (which is funded by employer contributions and which must be sufficient, when added to the annuity, to satisfy the amount specified in the benefit formula)."  (*Sonne*, *supra*, 48 Cal.4th at p. 121.)

Government Code section 21024 permits those who work for an agency that elects to be subject to the section to obtain up to four years of additional credit towards their retirement allowance for "public service," which includes service in the United States military.  (See *id*., subds. (a), (c), (e), (f).)  This public service is to be credited "as it would be credited if the member had been in state service during his or her public service."  (Gov. Code, § 21034.)  Government Code section 21024 was enacted in 1995 as part of the Public Employees' Retirement Law.  (Stats. 1995, ch. 379, § 2, pp. 2133-2134; see Gov. Code, § 20000.)  But it is derived from an earlier statute containing similar provisions.  (Gov. Code, former § 20930.3, added by Stats. 1974, ch. 1437, § 1, p. 3142.)

Government Code section 21024, subdivision (b), requires those who elect to receive the additional credit for public service to contribute money in order to receive it.  During the marriage, husband elected to obtain the four years of military service credit for which he was eligible and arranged to make the required contribution in installment payments, some of which came from community property.  We must decide whether the credit for the military service is community property or husband's separate property.

Two recent cases from this court guide us.  In *In re Marriage of Lehman* (1998) 18 Cal.4th 169 (*Lehman*), the husband and wife had been married during part, although not all, of the time the husband worked and accumulated retirement benefits.  At the time the husband retired, after dissolution of the marriage, his

4

employer offered an "enhanced retirement program" to encourage early retirement. The program included "the crediting of three putative years of service." (*Lehman*, *supra*, at p. 175.) We described these putative years as "*fictive* — they have no independent existence, but are merely a means by which the employer effects the enhancement." (*Id*. at p. 188.) Although the employer offered the enhanced program only after the marriage had dissolved, we found the three years' additional credit to be, in part, community property.

We explained that, "if the right to retirement benefits accrues, in some part, during marriage before separation, it is a community asset and is therefore owned by the community in which the nonemployee spouse as well as the employee spouse owns an interest." (*Lehman*, *supra*, 18 Cal.4th at p. 179.) "It follows that a nonemployee spouse who owns a community property interest in an employee spouse's retirement benefits owns a community property interest in the latter's retirement benefits as enhanced. That is because, practically by definition, the right to retirement benefits that accrues, at least in part, during marriage before separation underlies any right to an enhancement." (*Id*. at pp. 179-180.) "[W]hat is determinative is the single concrete fact of time. To the extent — and only to the extent — that an employee spouse accrues a right to property during marriage before separation, the property in question is a community asset." (*Id*. at p. 183.)

We cited with approval a New York case that had explained that a pension right owned as community property is, by its nature, subject to modification by future actions of either the employee or the employer. (*Lehman*, *supra*, 18 Cal.4th at pp. 183-184, citing *Olivo v. Olivo* (N.Y. 1993) 624 N.E.2d 151. 155.) Accordingly, " 'both parties' rights are generally subject to changes in the terms of a retirement plan, as well as to circumstances largely beyond their control, such as the salary level finally achieved by the employee and used to calculate the pension benefit. *What the nonemployee spouse possesses*, *in short*, *is the right to share in*

*the pension as it is ultimately determined. . . .* [Any] enhancement' in the amount is a 'modification of an asset not the creation of a new one.' " (*Lehman*, *supra*, at p. 184, quoting *Olivo v. Olivo*, *supra*, at p. 155, italics added in *Lehman*.)

In *Sonne*, *supra*, 48 Cal.4th 118, the husband transferred to a former wife several years of service credit that had accrued during the former marriage. The former wife exercised her right to collect a refund of the accumulated contributions in the retirement account, which permanently waived her rights to any further claim on the husband's retirement benefits. Later, the husband, then remarried, exercised his right to redeposit the same contributions into the account, thereby regaining the years of service credit he had previously transferred to the former wife. Some of the money used to redeposit the contributions was community property from the second marriage. When the second marriage was dissolved, "the question arose: What was the community's share of the service credit from the [former] marriage?" (*Id.* at p. 121.) The trial court had found that, to the extent community funds from the second marriage were used for the redeposit, the service credit was the second marriage's community property. We took a different view.

We agreed with the argument of an amicus curiae "that since community funds contributed only to the annuity component of the retirement allowance, the community was entitled only to a pro tanto share of the annuity — and not to a share of the much larger pension component, which was funded by employer contributions." (*Sonne*, *supra*, 48 Cal.4th at p. 121.) We explained that "a redeposit of member contributions for a prior period of service does not constitute consideration for the service credit for that period; it is merely a condition precedent to a credit for that previously rendered service. (See Gov. Code, § 20756.) The service credit (and the pension component of the retirement allowance) are more correctly described as ' "a form of deferred compensation for

6

services rendered." ' (*In re Marriage of Skaden* (1977) 19 Cal.3d 679, 686.) The trial court's analysis gave no weight whatsoever to the *service* Husband rendered as a deputy sheriff during those years, all of which preceded the [second] marriage." (*Id*. at p. 125.)

We found instructive *In re Marriage of Lucero* (1981) 118 Cal.App.3d 836 (*Lucero*), which, we said, "involved almost the mirror image of the present case." (*Sonne*, *supra*, 48 Cal.4th at p. 125.) As we explained, in *Lucero*, "the husband redeposited his federal employee retirement contributions after he and his wife had separated, using his own separate funds. Part of the redeposited contributions related to service years during the marriage. (*Lucero*, *supra*, 118 Cal.App.3d at p. 839.) In rejecting the husband's claim that the increase in his retirement benefit due to the redeposit was entirely his separate property, the Court of Appeal recognized that the substantial increase in the husband's retirement benefit 'was possible only as consideration for the husband's service' during the marriage (*id*. at p. 841) and that ' "the community owns *all* pension rights attributable to employment during the marriage." ' (*Id*. at p. 842.) Accordingly, the court concluded that the wife had a right 'to share in the increased retirement benefits upon payment of her pro rata share of the redeposit.' (*Ibid*.)" (*Sonne*, *supra*, at p. 125.)

The service credit at issue in *Sonne*, "by contrast, was not attributable to employment during the [second] marriage. Rather, it was earned during [the husband's former] marriage and was originally an asset of that community." (*Sonne*, *supra*, 48 Cal.4th at p. 126.) Because the husband had received that property as his own separate property, it had remained his separate property at the time of the second marriage. (*Ibid*., citing *In re Marriage of Stenquist* (1978) 21 Cal.3d 779, 788 ["that portion of the husband's pension attributable to employment before marriage" is separate property].)

7

We further explained that the husband had "retained, as his separate property, a right to recoup that service credit in the event [the former wife] were to withdraw the assets in her nonmember account. (See *In re Marriage of Brown* (1976) 15 Cal.3d 838, 846, fn. 8 ['The law has long recognized that a contingent future interest is property [citation] no matter how improbable the contingency . . .']; *In re Marriage of Joaquin* (1987) 193 Cal.App.3d 1529, 1533 [' " 'property to which one spouse has acquired an equitable right before marriage is separate property, though such right is not perfected until after marriage . . .' " '].) [The former wife] did just that (see Gov. Code, § 21292), and Husband elected to exercise his right to redeposit his member contributions plus interest. (See *id.*, §§ 20750, 20751.) Had he made that redeposit with separate property funds, the recouped service credit would unquestionably have been his separate property." (*Sonne*, *supra*, 48 Cal.4th at p. 126.) Accordingly, "the right to recover the prior service credit was Husband's separate property." (*Ibid.*)

We concluded in *Sonne* that "the community had a claim only on the annuity component relating to the time period of the [former] marriage, and was entitled only to a pro tanto share of *that portion* of Husband's retirement allowance." (*Sonne*, *supra*, 48 Cal.4th at pp. 127-128.) "The remainder of the retirement allowance is supplied by the pension, which derives from the contributions of the *employer* and which, the record shows, is several orders of magnitude larger than the accumulated member contributions. The [second marriage's] community did not contribute to that larger component of the retirement allowance, and it was therefore an abuse of discretion to award any share of it to the community." (*Id.* at p. 128.)

A treatise has aptly distilled the rule derived from these cases: "Pension and retirement benefits are a form of employment compensation and thus tantamount to 'earnings.' As such, *regardless of when the benefits 'vest' or are*

8

*received*, they are characterized in accordance with the employee's marital status at the time the services were rendered; i.e., the benefits are community property to the extent attributable to employment during marriage." (2 Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2012) § 8:141, p. 8-43.) Here, husband rendered his military service before the marriage, making the military service credit his separate property.

Wife argues the military service credit was an enhanced retirement benefit like the one in *Lehman*, *supra*, 18 Cal.4th 169, that we determined was partly community property. But this case is not similar to *Lehman*. In *Lehman*, the enhanced credits were based on "fictive" years (*id*. at p. 188, italics omitted), not real ones, and, accordingly, were attributable in part to years of work during the marriage. Here, husband served in the military rather than as a firefighter during the time in question. Government Code section 21034 treats that military service as if it had been service as a firefighter. In that limited sense, the military credit is fictive. But in the sense we used the term in *Lehman*, the years of credited service are not fictive. Those years are attributable to specific, actual years of military service that husband rendered before the marriage.

To designate a portion of those four years of credit as community property — as did the Court of Appeal — solely due to the community's contribution towards the required payment gives no weight to husband's premarital service to his country. (See *Sonne*, *supra*, 48 Cal.4th at p. 125.) But Government Code section 21034 specifically mandates that this military service is to be credited "as it would be credited if the member had been in state service during" that service. This demonstrates a legislative intent to fully credit persons for their military service. The four years of military service should be treated the same the way the years at issue in *Sonne* and *Lehman* were treated — basing the characterization of the credit on the marital status at the time of the service.

9

In *Sonne*, we were able to discern from the record that the payment from community funds went towards the annuity portion of the retirement benefits and not towards the far greater pension portion, which the employer paid. (*Sonne*, *supra*, 48 Cal.4th at pp. 127-128.) The situation is less clear in this case. On this record, it is difficult to determine exactly how the required contribution was calculated and what it paid for. The Court of Appeal believed that, unlike the situation in *Sonne*, husband had to pay both the employee's and the employer's contribution. But it explained that obtaining the credit was nonetheless beneficial because "whatever method was used to set [husband's] contribution to purchase military service credit, he was able to purchase it based on his salary at the time of hire, but he will receive payment for the service credit based on his salary upon retirement."

Wife stated in the trial court that the credit's value was about $140,000, far more than the cost of the contributions, and husband seemed to accept that figure, although it is not clear how either arrived at it. An amicus curiae brief from the Northern California Chapter of the American Academy of Matrimonial Lawyers filed in the Court of Appeal argues that the value of the credit was far greater than the cost of obtaining it, resulting in a "significant subsidy" that someone other than husband would have to pay, "and that someone must, by default, be the employer or CalPERS." An amicus curiae brief from Certified Family Law Specialist Barbara A. DiFranza filed in this court argues that the same annuity/pension dichotomy described in *Sonne*, *supra*, 48 Cal.4th at pages 127-128, governs this case.

Ultimately, it does not matter exactly how the contribution was calculated or what it paid for. It is clear the value of the four years of credit far exceeds the cost of obtaining it. Indeed, the difference in value is precisely what the parties are fighting over. The trial court awarded wife her share of the community's

10

contribution plus interest, but she seeks instead a share of the four years' worth of credit itself. As the *Lucero* court said regarding the redeposit of that case, purchasing the four years of military service "was obviously a great bargain." (*Lucero*, *supra*, 118 Cal.App.3d at p. 841.) And this bargain "was possible only as consideration for husband's service" in the United States military — service that predated the marriage. (*Ibid.*) The difference in value was not due to what the community contributed — part of the installment payments — but to what husband brought to the community — his military service. For these reasons, the difference in value between the four years' worth of credit and the cost of obtaining it is husband's separate property, subject to reimbursement for the community's contribution to the cost of obtaining the credit.

In reaching a contrary conclusion, the Court of Appeal found (and wife argues) that even after husband "started working for a CalPERS participant, and thus became eligible to purchase military service credit based on his premarital service in the military, his right to such credit amounted to no more than an 'expectancy,' which is not a property right divisible upon dissolution of marriage." (Citing *In re Marriage of Brown*, *supra*, 15 Cal.3d at pp. 844-845 (*Brown*).) To place this argument in perspective, we must take a step back in time.

Before the landmark decision of *Brown*, *supra*, 15 Cal.3d 838, which put California law regarding the property status of retirement benefits on the road it has followed ever since, the rule had been "that nonvested pension rights are not property, but a mere *expectancy*, and thus not a community asset subject to division upon dissolution of a marriage." (*Id.* at p. 841, italics added, citing *French v. French* (1941) 17 Cal.2d 775, 778 (*French*).) We noted in *Brown* that a Court of Appeal decision had explained that under this "*French* rule," " '[t]o the extent that payment is, at the time of the divorce, subject to conditions which may or may not occur, the pension is an expectancy, not subject to division as

11

community property.' " (*Brown*, *supra*, at p. 844, quoting *Williamson v. Williamson* (1962) 203 Cal.App.2d 8, 11.) *Brown* held that "the *French* rule cannot stand because nonvested pension rights are not an expectancy but a contingent interest in property . . . . Pension rights, whether or not vested, represent a property interest; to the extent that such rights derive from employment during coverture, they comprise a community asset subject to division in a dissolution proceeding." (*Brown*, *supra*, at pp. 841-842.) Accordingly, we overruled *French* and disapproved Court of Appeal cases that followed it, including *Williamson v. Williamson*, *supra*, 203 Cal.App.2d 8. (*Brown*, *supra*, at pp. 841, 851, fn. 14.)

We later summarized *Brown*'s new rule: "Under California law, retirement benefits earned by a spouse during a marriage are community property, subject to equal division upon the dissolution of the marriage. (*In re Marriage of Brown* (1976) 15 Cal.3d 838, 842 . . . .) This is true whether the benefits are vested or nonvested, matured or immature. (*Brown*, *supra*, at p. 842.)" (*In re Marriage of Gillmore* (1981) 29 Cal.3d 418, 422, fn. omitted.)

In explaining why previous courts had erred in finding nonvested pension rights to be a mere expectancy rather than a property interest, we said in *Brown* that the "term expectancy describes the interest of a person who merely foresees that he might receive a future beneficence, such as the interest of an heir apparent [citations], or of a beneficiary designated by a living insured who has a right to change the beneficiary [citations]. As these examples demonstrate, the defining characteristic of an expectancy is that its holder has no *enforceable right* to his beneficence." (*Brown*, *supra*, 15 Cal.3d at pp. 844-845, fn. omitted.) We contrasted such nonenforceable expectancies with retirement benefits, which are property rights. We explained "that an employee acquires a property right to pension benefits when he enters upon the performance of his employment

12

contract." (*Id*. at p. 845.) Nonvested retirement benefits are certainly contingent on various events occurring — such as continued employment — but this does not prevent them from being a property right for these purposes. "The fact that a contractual right is contingent upon future events does not degrade that right to an expectancy. The law has long recognized that a contingent future interest is property [citation] no matter how improbable the contingency (see Civ. Code, § 697); an expectancy, on the other hand, 'is not to be deemed an interest of any kind.' (Civ. Code, § 700.)" (*Id*. at p. 846, fn. 8.)

To call the right to obtain the credit for military service a mere expectancy rather than a property interest divisible on dissolution of the marriage is to regress to the pre-*Brown* days of *French*, *supra*, 17 Cal.2d 775, and *Williamson v. Williamson*, *supra*, 203 Cal.App.2d 8. The Court of Appeal based its conclusion that the right was a mere expectancy on the fact that, until exercised, the right was subject to certain contingencies. It argued that before husband exercised his right to obtain the credit, all that existed was "a possible expectancy that *if* Timothy continued to work for a CalPERS participant, and *if* [Government Code] section 21024 remained in effect, and *if* Timothy's employer continued to offer the option to buy military service credit pursuant to the statute, and *if* Timothy paid the requisite amount, he would be entitled to the benefit of the credit he purchased."

But much the same can be said of the right to redeposit contributions in *Sonne*, *supra*, 48 Cal.4th 118, and *Lucero*, *supra*, 118 Cal.App.3d 836. In *Sonne*, for example, the husband's right to redeposit his member contributions was contingent on the former wife's withdrawing the assets in her nonmember account. (*Sonne*, *supra*, 48 Cal.4th at p. 126.)

The interest at issue in *Lehman*, *supra*, 18 Cal.4th 169, faced far greater contingencies than those the Court of Appeal cited here. Unlike husband's right to obtain credit for military service, the enhanced retirement program in *Lehman* did

13

not even *exist* until after the marriage had been dissolved. During the marriage itself, any property right in the enhanced program was subject to the rather significant contingency *that it later be created*. But nevertheless, we found the enhanced benefits to be a property interest that was partly community property because the service on which it was based was partly rendered during the marriage. We explained that retirement benefits are, by their nature, subject to later changes, and that the nonemployee spouse possesses the right to share in the benefits as they are ultimately determined. (*Id*. at pp. 183-184.)

The contingencies the Court of Appeal cited do not degrade a property right to a mere expectancy. (*Brown*, *supra*, 15 Cal.3d at p. 846, fn, 8.) Unlike the hopeful heir apparent we cited in *Brown* as having a mere expectancy, husband here could enforce his right to receive the military credit any time he chose. This right was a property interest. Because husband rendered the service on which the credit was based before the marriage, it was his separate property, except to the extent the community contributed to the payments necessary to obtain it.

As the trial court recognized, wife does have an interest in the contributions the community made towards obtaining the military service credit. In a dissolution proceeding, the court must apportion an employee spouse's retirement benefits between the spouses' community property interest and any separate property interest the employee spouse may have. The court has discretion to choose the method of apportionment as long as the result is reasonable and fairly represents the relative contributions of the community and separate estates. (*Sonne*, *supra*, 48 Cal.4th at p. 124; *Lehman*, *supra*, 18 Cal.4th at p. 187.) To compensate wife for her interest, the court ordered husband to pay her an amount of money representing half of the payments made with community funds plus interest. Doing so came within the court's discretion. The court's order was reasonable and fairly represented the relative contributions of the community

14

estate (making some of the installment payments) and the separate estate (rendering the four years of military service on which the credit was based).

Wife argues that she is entitled to more than simply reimbursement of the community contribution towards the purchase price. She cites cases in which one spouse had purchased a house before marriage, paying part of the purchase price and taking a loan for the balance, and the community helped pay off the loan. In that situation, the spouse who had not originally purchased the house is entitled to more than mere reimbursement of the community payments. "Where community funds are used to make payments on property purchased by one of the spouses before marriage 'the rule developed through decisions in California gives to the community a pro tanto community property interest in such property in the ratio that the payments on the purchase price with community funds bear to the payments made with separate funds.' " (*In re Marriage of Moore* (1980) 28 Cal.3d 366, 371-372, quoting *Forbes v. Forbes* (1953) 118 Cal.App.2d 324, 325.)

These cases do not apply here. When one spouse purchases a house before marriage but also takes out a loan for part of the purchase price, that spouse, in effect, brings to the marriage only part of a house — the value of the house minus the size of the loan. In effect, the community itself purchases some of the house by paying off the loan. In that situation, when the community contributes much towards the equity in the house, the party bringing *part* of a house to the community should not be awarded *all* of the equity. The situation here is different. Husband brought to the marriage *all* of his four years of military service — not just part of it with a loan due on the rest. The trial court acted within its discretion in apportioning the separate and community interests as it did.

### III. CONCLUSION

We reverse the judgment of the Court of Appeal and remand the matter to that court for further proceedings consistent with this opinion.

CHIN, J.

WE CONCUR:

KENNARD, J.
BAXTER, J.
CORRIGAN, J.

**CONCURRING OPINION BY WERDEGAR, J.**

The central question in this marital dissolution proceeding is how to characterize four years of service credit in the California Public Employees' Retirement System (CalPERS) that Timothy P. Green (husband) earned during his premarital military service and elected to purchase with community funds during his marriage to Julie R. Green. The court concludes that, "except for the community's contribution to the cost of obtaining the credit, the four years of additional credit are the husband's separate property" because the "husband rendered the military service before the marriage." (Maj. opn., *ante*, at pp. 1-2.) "What matters in determining whether retirement benefits are community or separate property," the court holds, "is the person's marital status when the services on which the benefits are based were rendered." (*Id.* at p. 1.)

I concur in the court's judgment and agree with its conclusion in this case, where the employee spouse had the same marital status during the time he performed the work on which his public service credits were based and at the time he began employment with a CalPERS participating agency. In this case, husband was single during the four years he served in the United States Air Force (1982-1986) *and* when he was hired by a CalPERS participating firefighting agency (1989). Only in 1992, after both these events, did the parties marry. On these facts, the military service credits are aptly characterized as husband's separate property.

1

A more difficult question would arise if the parties had married *before* husband began working as a local firefighter.

Family Code section 760 provides generally that property "acquired by a married person during the marriage while domiciled in this state is community property," while under Family Code section 770, subdivision (a)(1), "property owned by [a] person before marriage" is that person's separate property. Time of acquisition is thus the "single concrete fact" most determinative of characterization: "To the extent—and only to the extent—that an employee spouse accrues a right to property during marriage before separation, the property in question is a community asset." (*In re Marriage of Lehman* (1998) 18 Cal.4th 169, 183; see *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 591 ["The status of property as community or separate is normally determined at the time of its acquisition."].)

When did husband acquire a property right in his military service credits? As we explained in *In re Marriage of Brown* (1976) 15 Cal.3d 838, 845, for purposes of community property law, and regardless of vesting rules, "an employee acquires a property right to pension benefits when he enters upon the performance of his employment contract." The court is therefore correct to reject the view of the Court of Appeal below that even after husband started working for a CalPERS participating agency, his right to purchase credits for his military service was a mere expectancy, becoming a divisible property right only when the credits were actually purchased. (Maj. opn., *ante*, at pp. 11-14.) But until husband started working for a participating employer, his prior military service entitled him to *no* CalPERS benefits. Before CalPERS employment, husband's interest in purchasing CalPERS service credits for his four years of military service could hardly be described as an expectancy, much less a contractual or property right. It appears, therefore, that husband's property interest in those

2

service credits was acquired when he began work as a firefighter for a participating agency.

Had the parties married between 1986 and 1989, after husband's military service and before he was hired by a CalPERS participating agency, we would be faced with a hard question: should the credits' characterization be governed by the employee's marital status when he *earned* them through his military service, or by his marital status when he *acquired a property right* to obtain them by virtue of employment with a participating employer? The fundamental rule of Family Code sections 760 and 770—that a property's character is governed by marital status at the time the property is acquired—weighs heavily on the side of the latter answer.

Arguments for the former position can certainly be imagined. One might observe that our decision in *In re Marriage of Sonne* (2010) 48 Cal.4th 118, 125-126, emphasized that the service credit at issue was attributable to CalPERS service preceding the parties' marriage—though of course that decision, like *In re Marriage of Lehman*, *supra*, 18 Cal.4th 169, involved credits for service with a participating employer. The employee in each of these cases thus acquired a property right to the credits at the same time he earned them by his service, and neither case presented the question posed above: If marital status at the time service credit rights are acquired differs from that at the time of the service itself, which governs? One might also point to Government Code section 21034's command that public service be credited as current or prior service "as it would be credited if the member had been in state service during his or her public service"—though that provision, by its terms, relates to how public service is *credited* within the CalPERS system, not to how it is *characterized* under community property law.

Further, it might be argued that making marital status at the time of the non-CalPERS public service strictly determinative leads to fairer and less arbitrary

3

divisions of property, since the parties' interests can be prorated to account for any period of marriage during the service, whereas a line drawn at the time CalPERS employment begins will determine the characterization of the entire service credit regardless of how soon before or after the commencement of CalPERS employment the parties married. However, such a result may be less arbitrary than it initially appears because employment decisions made during marriage are often joint decisions. If one spouse helps the other secure CalPERS employment or encourages him or her to accept CalPERS employment when offered, it hardly seems arbitrary to characterize retirement benefits derived from the resulting CalPERS employment as community property. Moreover, any potential arbitrariness might be alleviated through an equitable apportionment of the credits whatever their characterization (see, e.g., *In re Marriage of Sonne*, *supra*, 48 Cal.4th at pp. 127-129 [although right to repurchase service credit was husband's separate property, use of community funds for the repurchase entitled community to a share of the retirement benefit's annuity portion]), and in any event whether such policy considerations permit us to set aside the principle of Family Code section 760 is doubtful at best.

The present case does not call on us to consider these arguments and counterarguments. The court is not faced here with the problem of conflicting rules looking, on the one hand, to marital status at the time the employee performed the public service and, on the other, to marital status at the time he or she acquired a property right to obtain credits for that service. This is an easier case, as here the parties' marriage followed *both* these potentially critical events.

              **WERDEGAR, J.**

**WE CONCUR:**
**CANTIL-SAKAUYE, C. J.**
**LIU, J.**

4

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** In re Marriage of Green
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 205 Cal.App.4th 1475
**Rehearing Granted**

_____

**Opinion No.** S203561
**Date Filed:** June 24, 2013
_____

**Court:** Superior
**County:** Contra Costa
**Judge:** Charles B. Burch

_____

**Counsel:**

Aimee Feinberg and April Rose Sommer for Appellant.

Tarkington, O'Neill, Barrack & Chong and Robert A. Roth for Respondent.

Barbara A. DiFranza; Whiting, Fallon, Ross & Abel and Ann Fallon for the Northern California Chapter of the American Academy of Matrimonial Lawyers as Amicus Curiae on behalf of Respondent.

Barbara A. DiFranza as Amicus Curiae on behalf of Respondent.

R. Ann Fallon and James Crawford, Jr., as Amici Curiae.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

April Rose Sommer
P.O. Box 6937
Moraga, CA  94570
(510) 423-0676

Robert A. Roth
Tarkington, O'Neill, Barrack & Chong
2711 Alcatraz Avenue, Suite 3
Berkeley, CA  94705-2726
(510) 704-0921